St. Louis, Alton and Terre Haute Railroad Co.

*v.*

The People *ex rel.* Adolph Andel, County Collector.

*Opinion filed December 16, 1902.*

1. Roads and bridges—*section 20 of act of 1883 construed.* The power to borrow money and issue bonds, conferred upon highway commissioners by section 20 of the act of 1883, relating to roads and bridges, (Laws of 1883, p. 143,) for bridge purposes or "other distinct and expensive work," is only available where extraordinary obstructions to travel at certain places are to be overcome, and cannot be used to raise money simply for building roads.

2. Same—*section 20 of act of 1883 does not authorize the construction of macadamized road.* Section 20 of the Road and Bridge act of 1883 (Laws of 1883, p. 143,) does not authorize borrowing money and issuing bonds for the construction of macadamized roads, and such bonds, and taxes levied to pay interest thereon, are invalid.

Appeal from the County Court of St. Clair county; the Hon. Frank Perrin, Judge, presiding.

Messick & Crow, and Kramer, Creighton & Shaeffer, (John G. Drennan, of counsel,) for appellant.

James A. Farmer, State's Attorney, for appellee.

Mr. Justice Carter delivered the opinion of the court:

The county court rendered judgment against appellant for a delinquent "road bond tax," over its objection that the tax, and the bonded indebtedness on account of which the tax was levied, were without authority of law, and void.

It was stipulated that the commissioners of highways of the town of Centerville Station desiring to construct of rock and macadam four different public roads in said town under section 20 of the act in regard to roads and bridges in counties under township organization, etc., approved June 23, 1883, and in force July 1, 1883, (Hurd's Stat. 1899, p. 1472,) took the various steps provided by

said section 20 and constructed the roads mentioned. It was also stipulated that "the said roads were constructed of various lengths, by first placing along the center of said traveled way riprap of a depth of six inches and of a width of about twenty feet, and on the top of said riprap was placed macadam of the thickness of about four inches, and that said bonds were issued for the purpose of raising funds with which to construct said roads, * * * and that said bonds were not issued, and there was no attempt made to construct said roads under an act entitled 'An act to authorize the construction and maintenance of gravel, rock, macadam or other hard roads,' approved June 18, 1883, in force July 1, 1883." And it was further agreed "that the question submitted to the court on the trial of this cause is whether or not the bonds in question, issued under said section 20, and the taxes to which objection is herein made, are legal and valid."

So much of section 20 as is involved here is as follows: "When the commissioners desire to expend on any bridge or other distinct and expensive work on the road, a greater sum of money than is available to them by other means, the said commissioners may petition the supervisor of the town to call a special town meeting to vote on the proposition, which shall be clearly stated in the petition, substantially as follows: 'To borrow $......to construct or repair (describe the bridge or other work),' which said petition shall be signed by said commissioners in their official capacity and by at least twenty-five freeholders of such town; and thereupon such petition shall be filed in the office of the town clerk of such town."

The section differs from section 112 of the act of 1873, which was superseded by it, principally in including "other distinct and expensive work on the road" in addition to bridges, and the question is what work besides bridges the legislature intended to include by the addition of the clause last above quoted. Applying the or-

dinary rule of construction in such cases, *ejusdem generis* or *noscitur a sociis*, the "other distinct and expensive work on the road" would be controlled in its meaning by the word "bridges." While in one sense bridges on a public road are a part of the road, yet in their character and construction they differ from the road strictly so called, and are generally much more expensive to construct and maintain, and often require a greater outlay than can be provided for from the road and bridge tax. It is evident that the General Assembly regarded them as "distinct and expensive work on the road," and as being apart, in their character and cost, from the road itself. So, also, the "other distinct and expensive work on the road" besides bridges evidently means work distinct in its character and cost from the road itself, although on the road and so forming a part of it. Bridges are usually constructed across water-courses or deep depressions across the roadway, as a means of safe and convenient passage; but it is a matter of common knowledge that there are often other obstructions to safe and convenient travel over public roads which may be more advantageously obviated or removed by other means than by the construction of bridges. It might become advisable to construct a high embankment or other work over wet or marshy soil on some part of a public road, or to cut down a hill, to make the road passable or to improve it as a public highway. Such improvements on the road cannot, all of them, be said to be of the same nature or character as bridges, but they do subserve the common purpose of overcoming obstructions to travel at certain places on public highways. Bridges are not usually built along the entire length of the road, and cannot be said to be in any respect like a road itself constructed throughout of riprap and macadam, but they are distinct and expensive works on the road, and it would seem to follow that "other distinct and expensive work on the road" cannot be held to apply to the construction of the road itself.

The word "distinct" must be given its appropriate meaning, and that is, that the work contemplated by the language used is distinct from the road itself, confined to some particular part of it, and is of a more expensive character, like that of a bridge, otherwise the word "distinct" would be given no meaning whatever.

It would seem to follow that whether the rule *ejusdem generis* be applicable or not, the phrase "distinct and expensive work on the road" excludes the work of constructing the road itself, and provides only for some distinct and more expensive work on some part of it.

The General Assembly, at the same session at which section 20 was enacted, passed what is known as the "Hard Road act," under which such roads as those referred to in this record may be constructed, and appellant insists that it thus appears that body did not regard section 20 as conferring the power contended for. But counsel for appellee says in answer that it is clear that such roads may also be constructed under the general Road law of which section 20 is a part, and he refers to section 2, which in substance provides that the commissioners of highways shall have charge of the roads and bridges in their respective towns and shall improve and keep them in repair, as far as practicable, and that when available means are at their disposal they shall construct permanent roads, beginning where most needed, constructing them in accordance with the best known methods of road-making, by proper grading, drainage, and by the application of rock, gravel or other material. It is seen, however, that before the commissioners can exercise this power to construct such roads they must have available means at their disposal, and neither this section nor any other of the act authorizes them to borrow money, and issue the bonds of the town to procure money with which to construct such roads,—unless, indeed, appellee's counsel is right in his contention that said section 20 confers the power. But as we do not agree with counsel in his

view of the meaning of section 20 in this regard, it must be held that the bonds in question, and the tax levied to pay interest thereon, for which the judgment appealed from was rendered, were, respectively, issued and levied without authority of law and are invalid.    The court should have refused judgment.

It was error to overrule the objections and to render judgment for the tax.    Such judgment will therefore be reversed.                                        *Judgment reversed.*