NORTHWESTERN SAVINGS BANK v. TOWN OF CENTREVILLE STATION, ILL.

(Circuit Court of Appeals, Seventh Circuit. January 2, 1906.)

No. 1,183.

1. TOWNS—BONDS—BONA FIDE HOLDERS—RIGHTS.

Where town bonds recited on their face that they were issued under 3 Starr & C. Ann. St. 1896, c. 121, p. 3559, § 20, authorizing towns to borrow money for highway improvements, etc., and further recited that the supervisors and town clerk were acting under the direction of the commissioner of highways of the town to borrow money to build distinct and expensive improvements on the highways of the town, pursuant to a vote by ballot at a special town meeting, etc., authority for issuing the bonds appeared from such recitals, so that a purchaser in good faith was entitled to rest primarily on the presumptions arising from such recitals, establishing a prima facie liability against the town.

[Ed. Note.—Bona fide purchasers of municipal bonds, see note to Pickens Tp. v. Post, 41 C. C. A. 6.]

2. SAME—EFFECT.

The town being vested with legislative authority to issue bonds for the purpose recited, it was no defense, as against a bona fide holder, that the improvements for which the money was borrowed and expended were not strictly within the meaning of the act; the nature of the improvements not appearing in the recitals.

3. SAME—NOTICE TO HOLDER.

Though a purchaser of town bonds is chargeable with notice of the terms of the legislative act under which the bonds were issued, he is not bound to ascertain the regularity of the municipal action thereunder, in the face of recitals conclusively importing that such action was properly taken.

4. COURTS—DECISIONS—EFFECT.

In an action on town bonds by a bona fide purchaser for value, decisions of state courts of appeal holding such bonds invalid, rendered

143 F.—6

subsequent to the issue and sale of the bonds in controversy, to which plaintiff was not a party, were inoperative to govern plaintiff's rights.

[Ed. Note.—State Laws as rules of decision in federal courts, see notes to Wilson v. Perrin, 11 C. C. A. 71; Hill v. Hite, 29 C. C. A. 553.]

In Error to the Circuit Court of the United States for the Southern District of Illinois.

The Northwestern Savings Bank, plaintiff in error, sued the town of Centreville Station, in assumpsit, for recovery upon a series of bonds issued by that municipality and held by the bank as bona fide owner for value. Upon trial of the issues before the court, on waiver of a jury, a general finding was entered in favor of the defendant town, and this writ of error is prosecuted from the ensuing judgment against the bank.

The issue of bonds in controversy aggregated $35,500, all held by plaintiff in error, and 10 bonds of $500 each were past due, with past due coupons on all the bonds. Their form and recitals (except as to numbers and date of maturity) were as follows:

"No. 1                                                              $500.00
"United States of America, State of Illinois, County of St. Clair, Town of Centreville Station.

"Know all men by these presents, that the town of Centreville Station in the county of St. Clair and state of Illinois, is indebted to and will pay to the bearer hereof at the First National Bank of Belleville, Illinois, on the first day of September, A. D. 1904, the sum of five hundred dollars, lawful money of the United States of America, together with interest thereon at the rate of five and one-half per cent. per annum, from the date hereof until maturity of this bond, said interest being payable annually on the first day of September in each year, according to the tenor and effect of the interest coupons hereto attached.

"This bond is one of a series of seventy-one bonds, each bond being for the principal sum of five hundred dollars, and each bearing interest at the rate of five and one-half per centum per annum, from date until maturity, according to the terms of the interest coupons attached; said series being numbered consecutively from 1 to 71 both inclusive, and bearing even date herewith; the numbers 1 to 10 both inclusive being due and payable on the 1st day of September, A. D. 1907; the numbers 41 to 50 both inclusive being due and payable on the 1st day of September, A. D. 1905; the numbers 21 to 30 both inclusive being due and payable on the 1st day of September, A. D. 1906; the numbers 31 to 40 both inclusive being due and payable on the 1st day of September, A. D. 1907; the numbers 41 to 50 both inclusive being due and payable on the 1st day of September, A. D. 1908; the numbers 51 to 60 both inclusive being due and payable on the 1st day of September, A. D. 1909; and the numbers 61 to 71 both inclusive being due and payable on the 1st day of September, A. D. 1910. The entire issue of said bonds being issued under the authority granted said town of Centreville Station, by section twenty (20) of an act of the General Assembly of the state of Illinois, entitled 'An act in regard to roads and bridges in counties under township organization, and to repeal an act and parts of acts therein named approved June 23, 1883, and in force July 1, 1883,' by the supervisor and town clerk of the town aforesaid, acting under the direction of the commissioners of highways of said town, to borrow money to build distinct and expensive improvements on the highways of said town, pursuant to a vote by ballot at a special town meeting held within and for said town, on the 4th day of February, A. D. 1899, being duly held on the petition of the commissioners of highways and twenty-five freeholders of said town; said petition being duly filed in the office of the town clerk and of which said meeting notice was duly given in accordance with the statute in such cases made and provided. And due provision has been made by said town of Centreville Station, for the collection of a direct annual tax, sufficient to pay interest on such debt as it falls due, and also to pay and discharge the principal thereof at the time of the maturity of the said bonds according to the tenor and effect thereof,

in compliance with the requirements of section twelve (12) of article nine (9) of the Constitution of the state of Illinois of A. D. 1870.

"In witness whereof the supervisor and town clerk of said town of Centreville Station have hereunto set their hands and seals on this the 15th day of May, A. D. 1899.

"John Touchette, Supervisor.    [Seal.]
"[Seal.]                              "Thomas J. Simmons, Town Clerk.    [Seal.]"

These bonds purport to be issued under section 20 of an act of the Legislature of Illinois, entitled "An act in regard to roads and bridges in counties under township organization, and to repeal an act and parts of acts therein named," approved June 23, 1883, and in force July 1, 1883 (3 Starr & C. Ann. St. 1896, c. 121, p. 3559), which reads:

"¶20. Borrowing money for improvements—Vote of Special Town Meeting. Sec. 20. When the commissioners desire to expend on any bridge or other distinct and expensive work on the road, a greater sum of money than is available to them by other means, the said commissioners may petition the supervisors of the town to call a special town meeting to vote on the proposition, which shall be clearly stated in the petition substantially as follows: 'To borrow $——— to construct or repair (describe the bridge or other work),' which said petition shall be signed by said commissioners in their official capacity and by at least twenty-five freeholders of such town; and thereupon such petition shall be filed in the office of the town clerk of such town. Upon the filing of said petition, the supervisor shall order the town clerk, by an instrument in writing to be signed by him, to post up in ten of the most public places in said town, notices of such special town meeting; which notice shall state the object, time and place of meeting, the maximum sum to be borrowed, and the manner in which the voting is to be had, which shall invariably be by ballot, and shall be 'For borrowing money to (here define the purpose),' or 'Against borrowing money (here define the purpose).' The special town meeting shall be held at the place of the last annual town meeting, by giving at east ten days' notice, and returns thereof made in the same manner as other special town meetings are now, or may hereafter be provided by law; and if it shall appear that a majority of the legal voters voting at said election shall be in favor of said proposition, the supervisor and town clerk, acting under the direction of the commissioners of said town, shall issue from time to time, as the work progresses, a sufficient amount in the aggregate of the bonds of said town for the purpose of building such bridge, or other distinct and expensive work; said bonds to be of such denominations, bear such rate of interest, not exceeding six per cent., upon such time, and be disposed of as the necessities and conveniences of said town officers require; Provided, that said bonds shall not be sold or disposed of for less than their par value, and such town shall provide for the payment of such bonds and the interest thereon by appropriate taxation."

The declaration of the plaintiff, as amended, consists of two special counts and the common counts. The first count recites the foregoing statutory provision as authorizing the bonds, avers their issue pursuant thereto and their purchase by the plaintiff, without knowledge of their purpose except as stated on their face, and sets out a copy of one bond and coupons attached. It describes the bonds and coupons which are due—with the interest coupons paid prior to 1903, but unpaid thereafter—avers full compliance with all the statutory requirements, and that the bonds were issued "to borrow money to make distinct and expensive improvements on the highways of the town." In the second count, with like general averments, the facts and proceedings are detailed on which the bonds were predicated, including averments that the highway commissioners desired to make distinct and expensive improvements on distinct portions of 13 existing highways in the town and descriptions of the improvements made thereunder.

General and special demurrers were interposed to both special counts, and pleas of the general issue and statute of limitations were filed under the common counts, upon which issue was joined. The court sustained the demurrers to the first and second counts, and the plaintiff abided such counts.

Upon the trial, after the introduction of the bonds and formal proofs, the plaintiff tendered proof of all the facts and proceedings referred to, and these offers are well preserved in the bill of exceptions. The details, however, are not essential to this statement, as it is both undisputed and conceded in the brief on behalf of the defendant in error, that "all the requirements of the statute were complied with in the issuance of the bonds." Such evidence was excluded, under the view of the trial court that the invalidity of the bonds, for want of legislative authority was settled by a decision of the Supreme Court of the state in reference thereto, and error is assigned, in various forms, to these rulings upon the demurrers and offers and the exceptions which were saved.

In so far as the specific facts averred (and confessed by the demurrers) are deemed material for the purposes of this review, they are mentioned in the opinion.

Victor Koerner and B. H. Canby, for plaintiff in error.

R. J. Kramer and James J. Rafter, for defendant in error.

Before BAKER, SEAMAN, and KOHLSAAT, Circuit Judges.

SEAMAN, Circuit Judge (after stating the facts). The bonds in suit are executed on behalf of the town of Centreville Station, by the supervisor and town clerk, to borrow money for improvements, under the purported authority of an act of the Illinois Legislature, approved June 23, 1883, which appears as section 20, in 3 Starr & C. Ann. St. 1896, c. 121, p. 3559, par. 20. This act is entitled as one "in regard to roads and bridges in counties under township organization," and authorizes the issue of bonds "by the supervisor and town clerk, acting under the direction of the commissioners, when the commissioners desire to expend on any bridge or other distinct or expensive work on the road, a greater sum of money than is available to them by other means," upon petition, vote, and proceedings specified. Issuance under this act is expressly stated on the face of the bonds, together with recitals that the supervisor and town clerk were acting therein, "under the direction of the commissioners of highways of said town, to borrow money to build distinct and expensive improvements on the highways of said town, pursuant to a vote by ballot at a special town meeting" (mentioned in detail), and other proceedings are recited in conformity with all requirements of the act referred to and certain constitutional provisions. Authority for issuing the bonds thus appeared from the recitals, so the rule upheld in Lincoln v. Iron Co., 103 U. S. 412, 416, 26 L. Ed. 518, and County of Clay v. Society for Savings, 104 U. S. 579, 586, 26 L. Ed. 856, is plainly applicable, namely, that the holder in such case can rest, primarily at least, upon the presumptions arising from the recitals, and the burden of showing want of authority is cast upon the defendant, if provable in any view. The particular improvements intended or made out of the fund thus raised are not specified in the recitals, and surely no presumption arises that they were beyond the statutory authorization. The first count, therefore, stated prima facie liability, and was not demurrable, even on the assumption that such liability to this holder was open to contest for invalidity in fact.

The plaintiff in error, however, is a bona fide holder of the bonds for value, under the averments, and, unless its standing is impeached

as such holder, the rule is settled beyond controversy in the federal jurisdiction that the municipality is bound by the recitals in the bond when vested with legislative authority to issue bonds for the purpose recited. In the leading case of Commissioners of Knox Co. v. Aspinwall, 21 How. 539, 545, 16 L. Ed. 208, the doctrine was thus pronounced, and it is reaffirmed in a uniform line of decisions (collated in 3 Notes U. S. Rep. 897), including the recent case of Stanly Co. v. Coler, 190 U. S. 437, 450, 23 Sup. Ct. 811, 47 L. Ed. 1126. Consequently, inquiry is not open, by way of defense, whether the improvements for which the money was borrowed and expended were strictly within the meaning of the act referred to, as the nature of the improvements does not appear from the recitals. Although the purchaser of the bonds is chargeable with notice of the terms of the legislative authority, he is not bound to ascertain the regularity of the municipal action thereunder, in the face of these recitals and their conclusive import, under the doctrine stated.

The contentions on which the rulings and judgment against the plaintiff in error rest are substantially these: (1) That the improvements intended and effected out of the bond fund were beyond the objects authorized by the act; and (2) that decisions of the state Supreme Court and Appellate Court to that effect, which are cited, establish the want of authority for the issue of bonds. The decisions referred to are St. L., A. & T. H. R. R. Co. v. People ex rel., 200 Ill. 365, 367, 65 N. E. 715, and Town of Stites v. Wiggins Ferry Co., 97 Ill. App. 157, 159. While the first-mentioned case relates to this issue of bonds, and both cases involve interpretation of the statutory authority, both are subsequent to the issue and sale of the bonds in controversy, and are thus inoperative to govern the rights of the plaintiff in error, in any view under the authorities. Burgess v. Seligman, 107 U. S. 20, 33, 2 Sup. Ct. 10, 27 L. Ed. 359, and 10 Notes U. S. Rep. 446; Folsom v. Ninety-Six, 159 U. S. 611, 624, 16 Sup. Ct. 174, 40 L. Ed. 278; Stanly Co. v. Coler, 190 U. S. 437, 444, 23 Sup. Ct. 811, 47 L. Ed. 1126. This rule appears to be recognized, to a limited extent, in the brief for defendant in error, but it is contended that the decisions referred to are entitled to great weight, at least, as expressions of the state law. In so far as statutory construction and policy are determinative of the issue, it is of the utmost importance and well settled that state decisions, which are generally controlling, are in any aspect strongly persuasive when like questions are involved in the federal courts of co-ordinate jurisdiction. But in any view of the decisions cited, they are plainly inapplicable here, under the aforementioned doctrine, which protects the bona fide holder from a defense, opposed to the recitals in the bonds, that the legislative authority was not exercised in conformity with the statutory terms as interpreted by the courts.

The main reliance in support of the judgment is the case of St. L., A. & T. H. R. R. Co. v. People, supra, relating to the bonded indebtedness in controversy, and we are of opinion that the conclusions in that case are inapplicable for another reason. It arose upon the appeal of a taxpayer from a judgment of the county court for a de-

linquent "road and bond tax," levied on account of the same bonded indebtedness involved. in the present suit, and the validity of the indebtedness was challenged, without the presence of bondholders. It was submitted upon stipulated facts that the bonds were voted and issued "to construct of rock and macadam four different public roads in said town under section 20 of the act," referred to, and plainly failed to show that several "distinct and expensive improvements on the highways" were contemplated and made, as stated, not only in these bonds, but in the proceedings offered in evidence. The conclusion there reached, therefore, that bonds so issued and the tax levy to pay interest thereon were without authority of law, may well stand as unquestionable under the facts so submitted, but is in no sense binding against the bondholders, or upon the state of facts appearing in the present record. Indeed, the opinion in that case implies, at least (page 367 of 200 Ill., and page 716 of 65 N. E.), that such distinct and expensive improvements as are indicated in these recitals are within the meaning of the statute; and they certainly cannot be treated as excluded under that ruling, if otherwise applicable. Discussion of the appellate court decision in Town of Stites v. Wiggins Ferry Co., supra, is unnecessary, as the narrow construction of the statutory authority there adopted, if not inconsistent with the first-mentioned opinion, can, in no view, disturb the rights of the plaintiff in error previously acquired.

We are satisfied that the first count sufficiently states the cause of action, and that error is well assigned for the ruling which sustains demurrer to such count. So the second count was not demurrable, though facts are averred which do not enter into the prima facie case. The plaintiff in error was entitled to recover upon the evidence received, and the finding and judgment contra were erroneous.

The judgment is reversed, and the case remanded, accordingly, for further proceedings not inconsistent with this opinion.