CASE 76.—ACTION BY W. S. ROBERTS AND OTHERS AGAINST THE TOWN OF CLAY CITY TO COMPEL IT TO BUILD A BRIDGE ACROSS A RIVER RUNNING THROUGH THE TOWN.—February 13.

## Clay City v. Roberts, &c.

Appeal from Powell Circuit Court.

J. M. BENTON, Circuit Judge.

Judgment for plaintiffs. Defendant appeals. Reversed.

1. Bridges—Erection.—Where a town is authorized to build a bridge across a stream it is its duty to build a more permanent and substantial structure than a pontoon bridge.

2. Same—Refusal to Build Bridge—Lack of Funds.—The refusal of a town, because of a lack of available funds, to rebuild a bridge which has been washed away, will be sustained though a portion of the inhabitants are greatly · inconvenienced thereby.

3. Mandamus—Discretion of Council—Formality of Determination.—The council being the legislative branch of a town government as long as it acts within statutory authority in the management of the town affairs, its acts are not subject to judicial control, and the action of a town council in refusing to rebuild a bridge which had been washed away was not subject to review by mandamus.

JOHN D. ATKINSON, attorney for appellants.

We submit:

1. The relief granted is insufficient. If the plaintiffs were entitled to a bridge it should have been adjudged to be a substantial structure that would have been safe for the public to use.

2. The judgment is too indefinite and uncertain. There is no description of the structure directed to be built and no dimensions given, or of materials to be used in its construction. No mechanic could construct a bridge, under this judgment.

C. F. SPENCER and PENDLETON & BUSH, attorneys for appellee.

POINTS AND AUTHORITIES CITED.

1. Authority and power of the city to re-construct the bridge. (Kentucky Statutes, sec. 3643.)

2. Mandamus is the proper remedy. (Trustees, &c. v. Kinner, &c., 13 Bush, 334; Hammar v. City of Covington, 3 Metcalfe, 449; Kentucky Statutes, sec. 4330.)

3. It was the duty of the city council to re-construct the bridge across Red River. (Riley v. Buchannan, 76 S. W. Rep., 527; City of Louisville v. Snow's Administrator, 54 S. W. Rep., 862.)

OPINION OF THE COURT BY JUDGE LASSING—Reversing.

Clay City is a town of the fifth class, and Red river runs through the town. Some years ago a lumber company operated a planing mill on one side of the river and a sawmill on the other side, and for its convenience in carrying on its business this lumber company built a pontoon bridge across the river. The bridge was used by the lumber company and also by the citizens of the town in general. While the lumber company was in operation, it kept the bridge in repair. Some years ago the lumber company moved away from Clay City, and since that time such repairs as the bridge had were made by the town. Shortly before the institution of this suit the bridge washed

away.   Some 12 or 14 families, the proof shows, reside on the north side of the river, but the principal part of the town is on the south side.   After the bridge washed away and was destroyed, those citizens living on the north side of the river had no means of reaching the south side save by boat, and were thus cut off from the public buildings, churches, schoolhouses, etc., of the town on the south side.   They requested the authorities of the town to replace the bridge, and, they having refused to do so, instituted their suit in the Powell circuit court seeking to compel the town to replace the bridge.   The circuit judge, of his own motion, directed that Powell county be made a party defendant.   This was done by an amended petition.   A demurrer having been filed by Powell county to the petition as amended was sustained, and the petition dismissed as to Powell county, and the suit proceeded against the defendant Clay City alone.   The total income of the town was about $1,500 a year, and $1,000 of this was raised from saloon licenses, and at the date of the trial in the circuit court there was a deficit in the town treasury of something like $300.   The trial judge directed the trustees of the town to cause a bridge, or other contrivance, to be built across the river, at or near the point where the pontoon bridge crossed the river, the structure to be substantially as safe and convenient as the pontoon bridge was when it was in reasonably good repair.   From this order and judgment, the town appeals.

Appellees insist that by section 3643, Ky. Stat., 1903, the town council is empowered to reconstruct this bridge, and upon a showing that it was a public necessity it was their duty to do so, and that the fact that the town had kept the bridge in repair after the lumber company had moved away from the town

was an evidence that the town had accepted the bridge and made it a part of its public highways. It is true that the town had, after the lumber company had ceased to be operated, and had abandoned the bridge in question, kept its approaches in repair, and perhaps made some repairs to the bridge itself. But the proof on this point is not sufficient to warrant the conclusion that the town had accepted this bridge as a part of its thoroughfares. There is no proof showing the width of Red river at the point where it was crossed by this bridge, nor is there anything in the record in this case to give even an idea of what the cost of bridging the river, even with a pontoon bridge, would be. It has been held in the case of Leslie County v. Wooten, etc., 115 Ky. 850, 75 S. W. 208, 25 Ky. Law Rep. 217, that where a bridge which had washed away formed a part of a county road, it was the duty of the fiscal court to rebuild it, under section 1840, Ky. Stat., 1903, and that upon their refusal to do so, a mandamus would lie to compel them to rebuild it, it being shown that the bridge was over a stream on a much-traveled road. And in the case of Trustees of Elizabethtown v. Hardin County, a manuscript opinion filed in February, 1877, this court said: "Regarding the county court as controlling the road like any other public highway in the county, it is still certain, from the admitted facts, that this bridge is indispensable for public use, or at least made necessary by the wants of the public. It is on the principal thoroughfare traveled by one portion of the inhabitants of the county in going to, and returning from, the county seat and the railroad depot. It is a bridge constructed on a highway 70 feet long, and essentially a county bridge. The county court is required by statute to erect such structures on its public ways when required for public use." And the court

directed this bridge to be rebuilt by the county. In the case of Commonwealth v. Boone County, 82 Ky. 632, 6 Ky. Law Rep. 755, a mandamus was sought to compel the county court of claims to build a new bridge over a stream crossed by one of the public roads of the county. The court met and decided that the bridge was not necessary, and upon appeal to this court it was held that the question as to whether or not the bridge should be built was one that was properly left to the discretion of the county court, and that its discretion could not be controlled by mandamus. Thus it will be seen that the two cases in which the mandamus was held to lie were those in which bridges were destroyed, and it was made plain from the evidence in the case that they were public necessities, and, being such, it was the duty of the fiscal court having charge of the public roads and thoroughfares of the county to replace them. But, in the Boone county case, where an effort was made to compel the fiscal court to build a new bridge, it was held that it was within the discretion of the fiscal court to say and determine whether or not the building of the bridge was a necessity. We have been unable to find any case in which a city or town was required by mandamus to bridge a stream running through it. There is a special statute governing the replacing of county bridges which have been lost or destroyed, but this statute is not applicable to cities and towns, nor does it refer to or treat of bridges within the corporate limits of a town which have been destroyed. We doubt very much if a pontoon bridge would come within the meaning of the word "bridge" as used in the statutes. Evidently, the lawmakers had in mind a stable, and, to a reasonable degree, a durable, structure, when they used the word "bridge." A pontoon bridge, built upon no founda-

tion, but merely floating upon the surface of the water, and liable to be washed away by any sudden rise in the river, is neither substantial in its structure nor enduring in its nature. And while such a structure had been maintained for a number of years across the river in Clay City at the point named, it is not at all certain that, even if the town was shown to be able to replace it, and desired to do so, it would not be washed away or destroyed by the first flood in the river.

In the case before us, we are of the opinion that, if the town council should build a bridge across Red river, they would not be warranted in building a bridge known as a "pontoon bridge," one which might be swept away or destroyed at any time by a flood in the river, but it would be their duty to construct a bridge of more permanent and substantial nature. This being true, we are confronted with the question as to whether or not the finances of the town are such as would permit them to build a bridge across Red river of the character indicated, or, in fact, to build a bridge at all. Under section 3637, Ky. Stat., 1903, the council of a town of the fifth class has general power and authority to pass such ordinances or laws, not in conflict with the Constitution and general laws of the State or of the United States, as may be necessary to the proper conduct of the town's affairs, and included in this general power is the power to lay out and improve its streets and thoroughfares. It is left for the council to say, not only what streets shall be improved, but how they shall be improved. It is presumed that, being elected by the citizens of the town, and selected from among them, they will act for the best interests of the town. But, while the council is given the right to determine what streets shall be improved, and how it shall be done,

they are not left to arbitrarily spend the public money, but their acts in making expenditures for improvements are wisely hedged about by statutory provisions, and they may not make an indebtedness in excess of the available money in the treasury that may be legally applied to the purpose for which it is sought to be used. Section 3641, Ky. Stat., 1903, is as follows: "The city council shall not create, audit, allow or permit to accrue, any debt or liability in excess of the available money in the treasury that may be legally apportioned and appropriated for such purposes: Provided, that any city, during the first year of its existence under this chapter, may incur such indebtedness or liability as may be necessary, not exceeding in all the income and revenue provided for it in such year; nor shall any warrant be drawn or evidence of indebtedness be issued, unless there be at the time sufficient money in the treasury legally applicable to the payment of same, except as hereinafter provided." This section provides that in the event the council should deem it necessary that an indebtedness should be incurred that would exceed the levy authorized by law, then they cannot contract for or make such indebtedness, except by a vote of the citizens of the town, as provided for in section 3637, Ky. Stat., 1903, Hence, it would seem manifest that the town council, before undertaking any public improvement for the town, must decide that the desired improvement can be made out of the funds on hand in the public treasury available for that purpose, and, in the case at bar, the refusal of the council to build a bridge across Red river upon the request of the citizens of Clay City living north of the river may have been because of the fact that the proof showed there was no fund whatever in the public treasury available for that or any other purpose, and their

refusal to build the bridge in question would certainly be upheld upon this ground, for the council must be governed in their decision not alone by the needs and requirements of the citizens, but also, and to a large extent, by the ability of the town to meet the cost of the proposed improvement. The record before us shows that the total annual receipts of the town are about $1,500, and that $1,000 of this sum is derived from liquor licenses—a source of revenue that may be cut off at any time by the will of the people, and lost to the town. Out of this $1,500 the annual expenses of the town must be met. It may not all be applied to the discharge of a debt for any particular purpose. The town must be lighted, policed, and the other expenses incident to the maintenance of its government must be looked after. With this little revenue at its command, it is manifest that no extensive improvements could be undertaken by the council. The proof further shows that at the date of the trial of this case there was a deficit in the treasury of about $300. If, therefore, in the judgment of the council, any extensive improvement should be desired, it could only be undertaken by first obtaining the right to do so from the citizens of the town, by vote as directed in section 3637, Ky. Stat., 1903.

The council constitutes the legislative branch of the town government, and as long as it acts within the statutory authority given to it in the management of the town's affairs, its acts are not subject to judicial investigation or control. It cannot be required to act in any particular manner upon any subject with which it has a right to deal, and the aid of a court can be invoked only when it has refused to act at all, or acts arbitrarily, or beyond the scope of its statutory authority. In the case before us, the council has acted, and refused to build the bridge—whether

because the necessity therefor did not justify the outlay required to build it, or because of the financial inability of the town to build it, we do not know. The record is silent upon this point. But certain it is that the council has acted, and refused to build the bridge. Their action, in our judgment, is final, and, being clearly within the scope of their authority, is not subject to review.

The judgment is reversed. with instructions to dismiss the petition.