CASE 15.—ACTION BY THE CITY OF FLEMINGSBURG
AGAINST FLEMING COUNTY FOR A PORTION
OF THE COST OF A BRIDGE.—November 14.

# City of Flemingsburg v. Fleming County

Appeal from Fleming Circuit Court.

J. P. HARBESON, Circuit Judge.

Judgment for defendant, plaintiff appeals—
Reversed.

1. Bridges—Highways—"Bridges."—Though the word "bridge" is
used in every chapter and in almost every section of the
statutes relating to highways, a distinction has always been
made between bridges and other portions of the highway; the
word "bridge" not being equivalent to or included in the term
"highway."

2. Same—Cost of Construction—Division Between City and
County.—Where a bridge, over a creek running through a
city of the fifth class and wholly within the city limits, con-
nected two portions of a street, which was also a principal
county highway, was necessarily rebuilt by the city after the
county refused to contribute, the city was entitled to recover
from the county a fair portion of the cost of a reasonably
safe bridge convenient for public travel, to be determined on
the basis of the population and wealth of the county and the
county travel over the bridge as compared with the popula-
tion, wealth and travel by the inhabitants of the city.
Chief Justice O'Rear, and Judges Nunn and Settle dissenting.

J. B. CUMBER, attorney for appellant.

O. F. BRIGHT, City Attorney, of counsel.

The Kentucky Legislature having had the whole matter before
it, in considering the municipal corporation act, and having dele-
gated the power to build and repair and control bridges to the
larger cities—cities of the first four classes—and having withheld

City of Flemingsburg v. Fleming County.

that power from the smaller cities—the cities of the fifth and sixth classes—in order to do justice and equity to these smaller towns, in order to give them some small return out of the annual bridge tax exacted by the county, in order to make the taxes in some measure fair and uniform, in order to apply the Golden Rule—the foundation stone of all equity—between the citizens of smaller towns and the citizens of the county outside of the towns, and to apportion to each its share of the burdens and benefits of this taxation, the court has only to declare the law as it is written: That the county must build and repair all public bridges within its boundary, unless that duty is imposed by direct language on some other division or sub-division of the State; that the Legislature has imposed this duty on cities of the first, second, third and fourth classes,· but that it has not, either by direct language, or by fair inference, imposed such duty on cities of the fifth and sixth classes.

### AUTHORITIES CITED.

4 Am. & Eng. Ency. (2d Ed.), 936 920; St. L., A. & T. R. Co. v. People, 200 Ill., 365; State v. Canterbury, 28 N. H., 195-231; Ky. Stats., section 2825; Ky. Stats., section 3058, subsection 5; Ky. Stats., section 3119; Ky. Stats., section 3290, subsection 7; Ky. Stats., section 3583; 69 S. W. R:, 726; Ky. Stats., section 3643; Hood v. Trustees of Lebanon, 12 Ky. Law Rep., 813; Town of Paintsville v. Comth., 21 Ky. Law Rep., 1634; Lesley County v. Wooten, 75 S. W. R., 208; Ky. Stats., sections 1851 and 2744.

ALVIN KENDALL, County Attorney; W. G. DEARING and B. S. GRANNIS, attorneys for appellee.

We submit that the bridge in controversy was never a part of the highway of the county nor of any private corporation, but has always been considered by the city as a part of its street, maintained and controlled by it, with no thought of the county having any responsibility in regard to it, until the growing needs of the town and the desire to have the street at this point wholly closed for the convenience of the business houses flanking it on both sides made necessary, and an expensive structure, which they seek to foist upon the county under some strange and technical construction of the statute. Certainly to hold the county liable for the expense of this bridge, it should have the power to decide what sort of bridge should be built and also be charged with liability for its care, when it can not exercise any police care over it or to have the duty or right to keep it lighted or to

control its use in any way. That it was built with the city's convenience in view, and for the city's use, must be apparent.

### CASES CITED.

Town of Paintsville v. Comth., 21 Ky. Law Rep., 1634; Danville, etc., v. Fiscal Court, etc., 21 Ky. Law Rep., 196; City of Chicago v. Powers, 89 Am. Dec., 419; Erie v. Schwingle, 60 Am. Dec., 87; 4 Am. & Eng. Ency., 920, 927; Leslie County v. Wootten, 25 Ky. Law Rep., 217.

OPINION OF THE COURT BY JUDGE CARROLL—Reversing.

Flemingsburg, a city of the fifth class, has a population of about 1,100, and is situated on a creek that runs entirely through the city. Crossing this creek on a bridge within the city limits is one of the principal highways of the county, which is also used as a street of the city. It does not appear in the record whether this bridge was originally erected by the county or city or a turnpike company; but for the past 15 years the city has been exercising control over it and keeping it in repair. In 1905 the bridge became unsafe and dangerous for public travel, rendering it necessary to erect a new structure. Conceiving that it was the duty of the fiscal court to rebuild or erect a new one, the city council demanded that the fiscal court do this work. The court declined to do so, upon the ground that, as the bridge was entirely within the city limits, it was the duty of the city to repair or rebuild it. Thereupon the city did erect a new bridge that cost, as is averred, $3,065, and sought in this action to recover from the county of Fleming this sum. A demurrer was sustained to the petition, as well as to an amended petition, and, declining to further amend, the city prosecutes this appeal.

In considering the question involved, we must accept as true the averments of the petition, which are in part: "That one of the principal highways and thoroughfares of Fleming county runs from the southeastern boundary to the northeastern boundary of said county and passes through the corporate limits of said city of Flemingsburg and over the town branch by means of a bridge, which bridge is within the city limits; that on the south side of said bridge, about 100 feet from said bridge and on this highway, is situated the railroad depot and also the public graded school, and on the northeastern side of said branch and on said thoroughfare, and within 250 yards of said bridge, are situated the public buildings of Fleming county, composed of the courthouse, clerks' offices, and the jail; that it is necessary for persons residing in the southern and eastern portion of said county to cross by means of this bridge in order to attend court and visit the public buildings of the county, and it is also necessary for persons residing on the north and east side of the said town branch and bridge to cross the bridge in order to reach the railroad depot and public school." It was further averred that the price paid for the construction of the bridge was reasonable, and that it was of such a size and kind as was required to accommodate the general traveling public. This court has had occasion to consider questions somewhat similar to the one here presented, the latest being that of Nelson Co. v. City of Bardstown, 124 Ky. 636, 99 S. W. 940, 30 Ky. Law Rep. 870, where the bridge in controversy was situated at the boundary line of the city on one of the leading thoroughfares of the county; and this court there said: "The bridge in question is on a thoroughfare traveled by a large portion of the

inhabitants of the county in reaching the county seat
and the railroad station. It is essentially a county
bridge, and indispensable for the use of the county,
and is such a structure that the fiscal court should
maintain. It is entirely outside of the settled portion
of the city. It is not necessary for city purposes.
It is only nominally to any extent within its boun-
dary, and, under the principles of the opinion cited,
should be maintained by the fiscal court. It is incum-
bent on the fiscal court to build such bridges in the
county as the county requires; and the citizens of
the town will not be required to build a bridge for
the county, though it may be located within the town.
The entire burden of building and maintaining a
bridge on a county highway, though wholly within the
boundaries of a town, has been placed on the county,
where, from the size of the town, the character of
the bridge, the travel over it, and other circumstances,
this was just and right. But ordinarily, where a
bridge is within a city, and is necessary for the city
travel as well as the traveling public of the county,
as between the public and them, the burden rests on
both the city and county, and should be apportioned
between them in the proportion that the travel over
the bridge within the city bears to the travel over it
or from the county outside the city. If they cannot
agree upon it, then either may rebuild or repair the
bridge when necessary and recover from the other its
proportion of the cost. Culverts or such small
bridges as are essentially a part of the street should
be built and maintained by the city; but bridges which
span streams and are not fairly a part of the street
rest on a different ground, when they are for the
common benefit of the people of the city and the peo-
ple of the county outside of the city." The only

difference between the facts of that case and the one
at bar are that there the bridge was on the boundary
line of the city, while here it is entirely within the
city limits. And in the course of the opinion the
court unqualifiedly holds that in certain cases it would
be proper to require the county to construct or to aid
in the construction of a bridge, although it might be
entirely within the city limits. This doctrine was
expressly declared in Leslie County v. Wooten, 115
Ky. 850, 75 S. W. 208, 25 Ky. Law Rep. 217, in which
it was held that the fiscal court might be compelled by
mandamus to erect a bridge located within the cor-
porate limits and upon one of the public highways of
the county.

The real question is: Is the bridge upon one of the
thoroughfares or highways of the county, and is it
necessary for the use of the people of the county in
going to and from the public places and buildings
within the county? If so, the county, in cities the
size of Flemingsburg and smaller towns, should be
required to bear its proportion of the expense of
maintaining the bridge or erecting a new one. In
large cities, where bridges are necessary more for
the convenience of the inhabitants of the city than
the people of the county generally, and the cities by
reason of the population and wealth are financially
able to erect such bridges as may be required, the
county will ordinarily not be compelled to erect or
contribute to their erection; but it is a matter of
common knowledge that in a large number of the
smaller towns of the State the main streets are parts
of the public highways of the county, and are used
as much, if not more, by the people of the county
than they are by the inhabitants of the city; and
in such cases, where bridges are needed as parts of

the public highways, the county should be required to erect or contribute to their erection. Whether the county should bear the whole or only a proportionate part thereof must be left to be determined by the facts and circumstances of each case. It is not practicable to lay down any hard and fast rule. Thus, in Leslie county v. Wooten, 115 Ky. 850, 75 S. W. 208, 25 Ky. Law Rep. 217, the county was required to bear all the expense of erecting a bridge upon a public highway and street within the corporate limits of the town of Hyden, upon the ground that the town was not financially able to erect a bridge, and that a bridge was necessary for the convenience of the traveling public of the county.

In this connection, and throwing light upon the policy of the Legislature as to requiring the larger cities to erect and repair at their own expense bridges, it is worthy of some, but not controlling, notice that in the charters of cities of the first, second, third, and fourth classes provision is expressly made for the construction and repair of bridges (Ky. Stats. 1903, sections 2825, 3058, 3119, 3290); whereas, in the charters of cities of the fifth class and towns of the sixth class, the word "bridge" is not mentioned. It might therefore be inferred that the Legislature intended to impose on cities of the first, second, third, and fourth classes the duty of erecting and repairing bridges within the city limits; whilst the county might be required in whole or in part to erect and repair bridges in cities of the fifth class and towns of the sixth class. It is true that in Town of Paintsville v. Com., 55 S. W. 915, 21 Ky. Law Rep. 1634, it was held that a town of the sixth class could be indicted and punished for failing and refusing to keep in repair a bridge on a street of the town for an

unreasonable length of time; but in that case the question was not made or determined as to the duty of the county to contribute in whole or in part towards the erection of a new bridge or the repair of an old one. Nor does the fact that a town of the sixth class might be liable to indictment as for a nuisance in failing to provide for the repair of a bridge within the town limits, or made to respond in damages for injuries sustained by a traveler, conflict with the proposition that the town may require the county to erect or repair the structure complained of. As the town authorities could by taking proper action require the county to contribute in whole or in part as the facts might justify to the erection or repair of the structure, the town will be liable for negligence in this respect, as it would be for negligence in other matters connected with the streets and highways of the town. City of Chicago v. Powers, 42 Ill. 169, Am. Dec. 418.

The question involved in this case is of general importance, and the conclusion we have reached not free from difficulty. On the one hand, it is pressed with force that the fiscal court is charged by law with the conduct and management of the fiscal affairs of the county and the construction and repair of its highways and bridges, and that the discretion vested in it by the Legislature in matters of this character and others affecting the general welfare of the county ought not to be controlled or directed by boards of council or other municipal officers; that the cities and towns in the State are also corporations created by law, having the exclusive control of the streets and public places within the corporate limits; that, as the fiscal court cannot interfere in the governmental affairs of cities and towns, or

direct the governing authorities what improvements they shall make or how to make them, neither should the legislative boards of these municipalities be permitted to dictate to the fiscal court the manner in which it shall manage the affairs of the county. As an illustration of the evils that may result from permitting cities and towns to burden the county with heavy or unnecessary taxes without the consent of the fiscal court, the case before us is effectively cited. Here the city of Flemingsburg has constructed an expensive bridge crossing a small creek in the center of the town, and seeks to charge the whole cost of its construction upon the people of the county, although the agents whom the county has selected to govern its affairs had no voice in the erection of the bridge, or the amount that should be expended; and we are not unmindful of the danger attending a rule that might enable cities and towns to erect costly structures and charge the people of the county with the cost thereof.

On the other hand, it is urged that, although cities and towns are separate municipalities, invested with certain rights and powers, they are nevertheless a part of the county, the inhabitants being required to contribute to all expenses incident to county affairs, includng the construction of highways and bridges, and in addition to this are burdened with the expense of maintaining the municipal corporation in which they reside. Therefore it is said that when a structure such as a bridge, although situated within a town or city, is needed as much, if not more, for the use and benefit of the people of the county, than it is for the inhabitants of the city, and is located on one of the public highways of the county and the city, the county should be required to contribute its share

of the expense of erecting or keeping it in repair, as it is a part of one of the highways of the county, the same as if located outside the town limits, and the fiscal court under the statute is charged with the duty of maintaining it. And this view has received the approval of this court in three cases in which the question has been presented. It is true that a bridge located in a street is a part of it, and that it is the duty of cities and towns to provide for the construction and maintenance of their streets, and the county cannot be required to contribute anything to their improvement; but it does not necessarily follow from this that the county is also exempt from repairing or constructing a bridge which is a part of the street. Bridges do not fall in the same category as streets or roads. It is true that they are a part of the street or road; but a distinction has always been made between bridges and other portions of the highway, and is recognized in every chapter and in almost every section of the Kentucky Statutes treating of highways. The words are not equivalent and do not mean the same thing. St. L., A. & T. R. v. People, 200 Ill. 365, 65 N. E. 715; State v. Canterbury, 28 N. H. 195.

Having well in mind the troublesome nature of the question before us, and the difficulty in laying down any rule that will be equitable and fair to the people and taxpayers of the city and county, yet our conclusion is that the judgment of the lower court dismissing the petition was erroneous, and that the county should be required to contribute its fair proportion towards the expense needful to be incurred in erecting such a bridge across this stream as might be safe and sufficient for public travel. What proportion of the cost of such a structure should be borne

by the city and county we cannot on the record before us determine. This question must be decided by the lower court upon a rehearing of the case with all the facts before it. A city or town will not be permitted to erect a more expensive structure than is necessary for safe and convenient public travel, and charge the county with any part of the cost thereof over and above the amount necessary to erect a safe and sufficient bridge. If the bridge erected by the city cost more than was necessary to erect a structure safe, sufficient, and convenient for public travel, the city alone must bear the burden of this to the county's unnecessary expense. The county will only be required to pay its fair proportion of the cost of such a bridge as is herein indicated. This proportion must be determined by the lower court upon due consideration of the population and wealth of the county as compared with the population and wealth of the city, taken in connection with the proportion of travel over the bridge by the inhabitants of the city as compared with the travel over it by the people of the county.

Wherefore the judgment of the lower court is reversed, with directions to proceed in conformity with this opinion.

CHIEF JUSTICE O'REAR, dissenting. Conceiving that the majority opinion in this case has gone too far, I feel constrained to dissent, and in deference to that opinion of the public who may be concerned in a further investigation of the matter I will submit the reasons upon which I base this action.

It is to be noted in the first place that the liability adjudged is one of implied assumpsit by a municipal corporation against a county. Heretofore it has been understood that such actions do not lie; that the

county is an integral part of the State government, and is not liable to a suit, except by express authority of a statute or by necessary implication of a statute.  It could not be sued at all at the common law.  Nor is it a fact that the city of Flemingsburg has the right under any statute to incur a debt against the county.  The public highways of a county are under two bodies of control, namely, those in the city of the city authorities, and those in the county of the county authorities.  Each is answerable for the condition of the highways committed by statute to it, respectively.  The majority opinion is rested upon the authority of three previously adjudged cases in this court, namely, a manuscript opinion delivered in the case of Trustees of Elizabethtown v. Hardin County, filed February 9, 1877, Leslie County v. Wooten, 115 Ky. 850, 75 S. W. 208, 25 Ky. Law Rep. 217, and Nelson County v. City of Bardstown, 124 Ky. 636, 99 S. W. 940, 30 Ky. Law Rep. 870.

Elizabethtown v. Hardin County and Leslie County v. Wooten may be regarded as deciding the same question.  Both of these cases are rested upon a statute which expressly requires the fiscal courts of a county to repair public bridges within the county and forming a part of the county highways.  In each of the cases a mandamus was sought against the fiscal court to put it in action and to require it to perform a plain statutory duty about which it had no discretion, except as to the character of repairs it had to make upon the bridge and the amount of money that it might elect to spend therefor.  Accepting the proposition as settled and as sound that the writ of mandamus will issue at the instance of any interested suitor against the fiscal court of a county to require it to execute an express public duty, still neither of the

cases cited intimate that anybody else than the fiscal
court could either execute the statutory duty or exer-
cise a discretion as to the manner of its execution.  It
is far beyond anything hinted at in either of the cases
to hold that the judgment and discretion of a judical
officer, of a circuit judge, or of an appellate court,
could be substituted in such matter for that vested
by the Legislature in the county governing body
known as the "fiscal court."  In each of the cases
alluded to the fact was that within the corporate
limits of a town was a bridge which constituted a
material and essential part of a county highway.  It
had been erected in whole or in part by the county,
and had been maintained by it.  The court held that
bridges within the town, constituting essential parts
of the county system of highways, should be main-
tained by the county at large.  In Leslie County v.
Wooten it is recited: "It appears that the fiscal court
has heretofore ordered all the work which has been
done in keeping this road in repair, and for this pur-
pose has appointed overseers year after year.  Under
the authority above cited (Elizabethtown v. Hardin
County) we have reached the conclusion that the
bridge constitutes a part of the county road, and that
it is the duty of the fiscal court to rebuild it."  The
court then reviewed the authorities holding that the
statute imposed expressly upon the fiscal courts the
duty to repair county bridges, and that such duty was
one that a court could require by mandamus to be
executed at the suit of any interested party. But it was
pointed out in Leslie County v. Wooten, citing and ap-
proving Com'th. v. Boone County Court, 82 Ky. 632,
6 Ky. Law Rep. 755, that mandamus would not lie to
compel the fiscal court to build a new bridge, not-
withstanding the section of the statute, which pro-

vides (section 4345 of the Kentucky Statutes of 1903) that it shall be the duty of the fiscal court to make immediate provision for an emergency, includes the building of new, as well as repairing of old, bridges. In Clay City v. Roberts, 124 Ky. 594, 99 S. W. 651, 30 Ky. Law Rep. 820, the same case was cited with approval. The court refused the mandamus to compel the municipality to construct a new bridge, drawing a distinction between the construction of a new and the reconstruction of an old one.

We now come to the Nelson County case. That case was an agreed action filed in the circuit court for the construction by that court of the sections of the statute concerning the obligation imposed by statute upon a town of the fifth class and the county in which it was situated respecting the keeping up of the public highways which traversed both of the units. A mandamus was not sought in that case. Neither municipality was refusing to do what it had to do. On the contrary, they were seeking light as to what their legal duty was in order that they might do it. The sole questions presented were, first, whose duty was it to keep up that part of the turnpike formerly owned by private corporations, but recently acquired under the free turnpike act, which now lay within the incorporated towns? The court answered that query upon the authority of Board of Council of Danville v. Fiscal Court of Boyle County, 106 Ky. 608 21 Ky. Law Rep. 196, 51 S. W. 157, to the effect: "That the turnpikes, when purchased by the fiscal court, became public highways; the part lying within the city, being a public way, should be controlled by it; and the part without the city, falling within the fiscal court's jurisdiction, should be controlled by it." The second question submitted by that case was as to which of

the municipalities was under the duty to keep in repair a bridge across a stream which constituted the dividing line between the city and the county. Section 3643 of the Kentucky Statutes of 1903, governing cities of the fifth class, was cited as the chart of the court's deliverance on this subject, although the word "bridge" was not used in that section, dealing with streets, avenues, and highways. This court then held: "This statute is broad enough to include everything made necessary for the sufficiency of the public ways for purposes of travel, and, while the statute does not use words declaring the power of the city council exclusive, the necessary effect of the statute is the same as if such words had been used." The bridge was differentiated from a street. Elizabethtown v. Hardin County and Leslie County v. Wooten were cited as authority. It was pointed out in that case that the bridge was not required for purposes of urban travel, but only for the travel to and from the county; that, while nominally within the corporate limits, practically it was outside of such centers of population as required considerable use of it by the urban population. For that reason it was held to be a part of the county highways, and that the county fiscal court was under the duty to keep it in repair.

It should be noted at this point that the facts of the case at bar are materially different from those in any of the cases above discussed. Here the bridge was not built by the county, was never owned by it, and the fiscal court never assumed or exercised any control over it. Furthermore, this bridge is in the heart of the city, is used mainly by its own population for their convenience, and only incidentally by the people from the country. If the case had merely stopped at the point of saying upon the authorities of

the cases above cited that the county was under the obligation to keep this bridge in repair, the result would not have been so objectionable. In that event, under the authorities indicated, a mandamus would lie at the suit of the citizens of the town or county, or at the suit of the town, against the fiscal court to require it to perform the duty held to be imposed upon it under the statute to keep the bridge in repair. But the case does not stop there. The town did not pursue the course adopted by the plaintiffs in any of the cases above cited. It did not resort to the courts to require the fiscal court of the county to act in discharge of its statutory duty, and to exercise in its discharge such discretion as was vested in it by law. But this city, usurping the jurisdiction and functions of the fiscal court, contracted a debt on behalf of the county. It exercised a discretion vested by statute in the fiscal court as to what kind of repairs should be made upon a county bridge, if this be a county bridge, and has in fact erected a handsome and expensive concrete bridge at a cost of more than $3,000, over an insignificant stream—an ornate affair that would speak well for the pride and public spirit of the city, were we not reminded by this suit that it expects the bill to be paid by the county at large.

The opinion is an anomaly, furthermore, in that it asserts obiter dictum that, notwithstanding this bridge is a part of the county highway, yet for failure to keep it in repair—a neglect of duty in part at least by the fiscal court, as the opinion holds, the city would be liable to one injured thereon. The converse perhaps would seem to be true—that if the county should voluntarily execute the duty of keeping the bridge in repair, but do so in such manner as that an employe or other person were in-

jured thereby, the city would be liable in damages for the injury. In Town of Paintsville v. Commonwealth, 21 Ky. Law Rep. 1634, 55 S. W. 915, it was said: "When a public way is opened through a city for the use of the public, and is accepted and used by the city, such way, and any bridge forming part of it, becomes a public way of the city, and, if necessary and for the use of the citizens, such bridge must be kept in repair, and must not be suffered by the city to become and remain unsafe for travel. The town authorities have control over it. Section 3704, Ky. Stats. 1903. The citizens of the town are exempt from working upon the county roads outside the town limits. Section 4308. The city, for governmental purposes, is separate from the remainder of the county. Section 1851." And in Clay City v. Roberts, supra, it is said: "There is a special statute governing the replacing of county bridges which have been lost or destroyed, but this statute is not applicable to cities and towns, nor does it refer to or treat of bridges within the corporate limits of a town which have been destroyed." It was decided that mandamus would not lie against the town to require it to repair a bridge within its limits and forming a part of its system of highways.

We then have this state of case under the opinions of this court: That a bridge within a town which forms a part of a general highway traversing a county should be rebuilt, in case it falls into disrepair, in part by the town and in part by the county; that the chancellor will judge as to how much each municipality should contribute; that as to the county mandamus will lie to compel the fiscal court to perform its part of its duty, but that as to the town mandamus will not lie to require it to perform its

part; and, furthermore, if the county fails to perform its duty, instead of resorting to mandamus, the city may act for the county and incur for the latter a very heavy expense. This confusion, which is further extended by the opinion in this case, is the result, in my judgment, of an attempt on the part of the court to relieve a situation which calls for some remedy, but which has not been provided for by legislation.

JUDGES NUNN and SETTLE, concur in this dissent.