## City of Pineville v. Robbins, Judge, et al.

(Decided December 20, 1929.)

E. B. WILSON for appellant.

LOW & BRYANT for appellees.

OPINION OF THE COURT BY CHIEF JUSTICE THOMAS—
Reversing.

The city of Pineville is one of the fourth class, having a population of 3,500. It filed this action in the Bell circuit court against Bell county, its fiscal caurt, and the members thereof, to have it adjudged that Bell county should contribute to the costs of constructing, repairing, and maintaining two bridges within the sparsely settled eastern portion of the corporate limits of the city, one of which is 321 feet long and spans Cumberland river, and the other is shorter and spans Straight creek. Both of those streams run through the referred to portion of the municipality and the bridges are portions of one of its principal streets, and which is also one of the main county roads of the county and upon which about 25 per cent. of the population of the county outside of the city is compelled to travel to get to the county seat, the county high school located within the city, and other public places of the county. The petition also sought a mandatory order requiring the fiscal court to levy and collect a county tax sufficient to pay one-half the costs of the two bridges, upon the theory that such an amount was a just proportion of such costs that the county should pay. The petition alleged that there were two or three other bridges within the corporate limits in a different part of the city across the same streams which it had construed and was maintaining, though no contributory relief was sought as to them, but only as to the first mentioned one across Cumberland river, which was in the course of construction and would cost $40,650, and one across Straight creek that had recently been repaired by the city at a cost of $7,500.

The petition as amended averred that the city of Pineville was located at the apex of a triangle formed by two mountain ranges taking in a large portion of the eastern part of the county amounting to about one-fourth thereof, and that the road which the two bridges in question formed a part was the only means of ingress to the city for the inhabitants of that triangle. It was further

averred that the entire present tax rate paid by the rural population of the county, including state, county, and school tax, was $1.79 on each $100 of assessed valuation, $1.15 of which was also paid by the inhabitants of the city, and that there was a municipal rate of taxation of $2.94 per $100 of assessed valuation of the property therein, which made a total rate of all taxes paid by the inhabitants of the city of $4.09 per $100 valuation of property, or $2.30 more than that paid by the rural property owner. It was also further alleged that the city was already taxed for governmental expenses and other valid obligations to the limit of its constitutional authority. The court sustained a demurrer to the petition as amended and dismissed it, to reverse which the city prosecutes this appeal.

This court as far back as February 9, 1877, in the case of Trustees of Elizabethtown v. Hardin County, 9 Ky. Ops. 332, in furtherance of what it concluded was exact justice, held that, under certain conditions, a county should contribute to the construction, repair, and maintenance of a bridge forming a part of a county road although it was located within the corporate limits of a municipal corporation, and the county of Hardin in that case was adjudged to construct a bridge within the corporate limits of Elizabethtown, the county seat of the county. The bridge spanned a stream running through the city and was about 75 feet long and was a part of one of the principal county roads which had theretofore been a turnpike, although it was then within the corporate limits of the city. It is not pointed out in that opinion that there then existed any express constitutional or statutory authority for that adjudication, and in the absence of some such inhibition, the general principles of equity were applied by this court as a foundation for the doctrine therein announced. In stating the basic principles upon which that opinion was rested, this court said: "The citizen of the town is taxed to aid in building all such bridges erected in the county, and when called on by the tax gatherer must contribute in the same proportion with the citizen living outside the town limits. The citizens of the town bear the burden in common with the citizens of the county. If this town was an independent municipality, having no burdens to bear, in the way of taxation, in common with the people of the county, for county improvements, then it might be well argued that the town should make all the improvements within its limits.

While the town must keep its streets and alleys in repair, it cannot be said that such a structure as this is to be regarded as a part of the street for the purpose of compelling its population to rebuild or repair it. It is within the county as well as the town limits, and is that character of improvements required to be made by the county court when the necessities of the public demand it.''

That opinion was followed and its holding adopted and applied in the later cases of Leslie County v. Wooten, 115 Ky. 850, 75 S. W. 208; 25 Law Rep. 217; Nelson County v. Bardstown, 124 Ky. 636, 99 S. W. 940, 941, 30 Ky. Law Rep. 870; City of Flemingsburg v. Fleming County, 127 Ky. 120, 105 S. W. 133, 135, 32 Ky. Law Rep. 11; and City of Clinton v. Hickman County, 160 Ky. 687, 170 S. W. 11. The principles underlying the Hardin County case were also recognized as sound in the case of Clay City v. Roberts, 124 Ky. 594, 99 S. W. 651, 30 Ky. Law Rep. 820, and those cases are all of the ones from this court that we have been able to find bearing upon or dealing with the question. In each of them the county was made to contribute to the construction, repair, and maintenance of bridges forming a part of a county road, though located within the municipal corporate limits, and in the Wooten case, and perhaps others of them, the county was made to pay the entire costs and which was done because from the size of the city and its sources of revenue it was utterly financially unable to do so. The underlying principle of the doctrine, announced by those opinions was but the statement of this court's conception of what was just and right, according to the fundamental principles of equity, under the circumstances and conditions, and which is illustrated by this excerpt from the Wooten opinion which was copied into and made a part of the opinion in the Bardstown case: '' 'While the town must keep its streets and alleys in repair, it cannot be said that such a structure as this is to be regarded as a part of the street for the purpose of compelling its population to rebuild or repair it. It is within the county as well as the town limits, and is that character of improvement required to be made by the county court when the necessities of the public demand it.' See, also, Clay City v. Roberts, etc., . . . 99 S. W. 651, 30 Ky. Law Rep. 820 (124 Ky. 594).'' It was also said in the Bardstown opinion that: ''The entire burden of building and maintaining a bridge on a county highway, though wholly

within the boundaries of a town, has been placed on the county where from the size of the town, the character of the bridge, the travel over it, and other circumstances, this was just and right. But ordinarily where a bridge is within a city, and is necessary for city travel, as well as the traveling public of the county, as between the public and them, the burden rests on both the city and the county (Paintsville v. Commonwealth, 55 S. W. 915, 21 Ky. Law Rep. 1634), and should be apportioned between them in the proportion that the travel over the bridge within the city bears to the travel over it to or from the county outside of the city. If they cannot agree upon it, then either may rebuild or repair the bridge when necessary, and recover from the other its proportion of the cost. Waupun v. Chester, 61 Wis. 401, 21 N. W. 251, and cases cited. Culverts, or such small bridges as are essentially a part of the street, should be built and maintained by the city; but bridges which span streams, and are not fairly a part of the street, rest on a different ground, when they are for the common benefit of the people of the city and the people of the county outside of the city.''

The opinion in the City of Flemingsburg case adhered to and applied the same principles, and in adjusting the obligations in such cases between the county and the city the opinion said: ''This proportion (of contribution as between the city and county) must be determined . . . upon due consideration of the population and wealth of the county as compared with the population and wealth of the city, taken in connection with the proportion of travel over the bridge by the inhabitants of the city as compared with the travel over it by the people of the county.'' However, in an endeavor to fortify the conclusions therein reached (but which, as we have seen, had previously been announced by this court in prior opinions thereby dispensing with the necessity of such fortification), the opinion in that case referred to the fact that in charters of the first four classes of cities the legislative authorities were given the power and authority to construct bridges therein, while in charters of the fifth and sixth classes the word ''bridge'' was not mentioned, and the municipality in that case (Flemingsburg), and those in the prior cases, were cities either of the fifth or sixth class. But this court, in the Flemingsburg case, expressly said that such reference, while worthy of consideration, was ''not controlling;'' thereby expressly re-

cognizing that conditions might be such as to require contribution from the county to municipalities larger than that of the fifth class, and which it appears to us would be eminently just and proper if the conditions were such as to render it just and proper that the county should contribute its proportion of the construction, repair, and maintenance of such a bridge located within the municipality. We see no cause, if the conditions are such as to demand the application of the doctrine announced with respect to cities of the fifth and sixth classes, for withholding its application under the same conditions, although the municipality has a population entitling it to a higher classification and in which higher class it has been placed.

Of course, we recognize the fact that a city might be of such size and have within its corporate limits sufficient valuable property and other sources of revenue as to remove the conditions calling for the application of the right of contribution by the county, and in some of the cited opinions it is so recognized when it is stated that each case must be governed by its particular facts. But, when the facts with reference to a fourth class city are the same, if not more appealing in behalf of the contribution by the county than what appeared in any of the cited cases, it surely could not be contended that the right to contribution should be denied for no other reason than the arbitrary one that the city belonged to a higher class of municipalities than any of those to which the right has heretofore been adjudged. If the doctrine be sound, and we think it is, it must be because the facts upon which it is made to rest call for the application of just and equitable principles, and if the facts are the same with reference to a fourth class city as with reference to fifth or sixth class cities (involved in the prior cases), then in the absence of some legislative or constitutional inhibition the same doctrine should be applied. The case presented by the petition is one where at least one-fourth of the population of the county is compelled to travel over the two bridges involved because they form a part of a county public road over which such per cent of the population must travel to get to the county seat to perform their public duties, and for other lawful purposes.

The inhabitants of the city, as stated in the Hardin county and other cases, pay their county taxes, including road and bridge taxes, the same as is paid by rural inhabitants of the county. It is alleged in the petition that

at least 50 per cent. of the use of the two bridges is made by the rural inhabitants of the county in the manner and for the purposes hereinbefore mentioned; that plaintiff municipality is now to the limit of its power and authority to raise revenue and was compelled to vote a bonded indebtedness in order to construct the bridge across Cumberland river, one-half of which it seeks to make the county contribute by this action. It furthermore appears that the two streams mentioned wind and twist as they run through the corporate limits of Pineville, thereby rendering it necessary for a number of bridges to be constructed as a part of some of its streets other than the two involved in this litigation, which two form a part of one of its streets and were, as stated, a part of one of the principal county roads of the county. If the conditions as portrayed in the petition do not create a situation for the application of the doctrine of the cases supra, then none such existed in any of those cases, and it would be a difficult matter to portray one that would do so.

We therefore conclude that the court erred in sustaining the demurrer to the petition and dismissing it, unless there exists some statute which by its express or implied terms withholds the right of contribution, and which brings us to a consideration of two statutes which it is insisted have that effect.

Section 3583 of our present statutes, which is a part of charters of cities of the fourth class, to which Pineville belongs, is a part of an amendment to such charters and was enacted in 1894 and gave authority to the board of council of cities of that class to establish a board of public works, and the section vests in such board of public works, if created, exclusive control over the construction, supervision, etc., of streets, alleys, avenues, and other public ways and places of the city, including bridges, and it is insisted that the Legislature intended thereby to impose the *exclusive* duty of constructing bridges within the municipality upon its board of public works; but which we think is not deducible from the language of the section. Its purpose was to give the primary control over such construction to the board of public works if one was created, in preference to any other department of the city and which would render the city amenable, either civilly or criminally, for the failure to do so (City of Pineville v. Lawson, 225 Ky. 542, 9 S. W. (2d) 517); but we find nothing in that section indicating that it was the intention and

purpose of the Legislature in its enactment to impose upon the municipality, under the conditions hereinbefore discussed, the entire burden of constructing and maintaining such bridges.

The other statute relied on to relieve the county from contribution sought by the petition is section 4356t-8 of Baldwin's Supplement to our 1922 edition of the statutes, dealing with state highways constructed by the state highway commission. It authorizes such highways to be constructed by the state highway commission through cities and towns of the fifth or sixth class, and says nothing about the right to construct such highways through higher class cities. From that fact it is argued that the Legislature intended by the enactment of that section to place the entire burden of the construction of highways and bridges passing through cities and towns of the first four classes upon the municipality alone, and which for the purposes of this case might be conceded as correct, but if true it would have the effect to only relieve the *state* from contributing to the city its proportionate costs of bridges constructed by it within its corporate limits on that portion of the state highways passing through the city and could have no effect upon the right of the city to demand contribution from the *county* with respect to *county* roads such as is the one here involved according to the allegations of the petition. But it is said that a portion of that road outside of the city of Pineville has been made a part of the state highway projects, but which fact does not appear in the record, although we might take judicial notice of it notwithstanding it does not so appear. However, the state has never taken over the road or in any other manner exercised control or supervision of it, and until done it remains a county road and is not included within the terms of the statute now under consideration and relied on by counsel for the county to excuse it from the relief sought by the petition.

From what has been said we conclude that the judgment was erroneous, and it is reversed, with directions to set it aside and to overrule the demurrer to the petition, and for further proceedings consistent with this opinion.

Whole court sitting.