THE PEOPLE ex rel. E. DEVILLO ROOT, as Supervisor, etc., Respondent, *v.* THE BOARD OF SUPERVISORS OF THE COUNTY OF STEUBEN, Appellant.

Under the provisions of the " Highway Law " (§ 130, chap. 568, Laws of 1890), fixing the liability for the expenses of the construction and repair of public free bridges as between a town and county, the right of a town to demand contribution from the county when the bridge expenditure of the town is in excess of one-sixth of one per cent of the assessed valuation of its taxable property, is not limited to expenditures for bridges which cross streams forming boundaries of the town, but applies as well to bridges erected wholly within the town.

In proceedings by mandamus to compel the county of Steuben to levy a tax to pay the proportion alleged to be due from it under said act of the expense incurred by the town of Addison for the repair and construction of bridges, it appeared that a portion of the expenditure was for the construction of a bridge in the village of Addison in said town. By the village charter the bridge was excepted from the the jurisdiction of the village authorities, and left under the control of the commissioners of highways of the town. It was claimed by the board of supervisors that the bridge was not a town bridge within the statute. *Held,* untenable.

Reported below, 81 Hun, 216.

(Argued April 23, 1895; decided May 21, 1895.)

APPEAL from order of the General Term of the Supreme Court in the fifth judicial department, entered upon an order made October 2, 1894, which affirmed an order of Special Term granting an application by the relator for a peremptory writ of mandamus.

The writ required the board of supervisors of Steuben county to levy upon the taxable property of the county the sum of

$1,840.03, part of the expenses incurred by the town of Addison for bridge purposes during the year preceding November 1, 1893.  It appeared from the application that the bridge crossing the Canisteo river in the village of Addison, in the town of Addison, in 1892, became unsafe and was condemned by the state engineer and surveyor, and upon application of highway commissioners of the town the town board authorized the construction of a new bridge in place of the one condemned; that a new bridge was built; that the cost of the new bridge and of repairs upon other bridges of the town during the year mentioned was $7,144.62.  In November, 1893, highway commissioners of the town made and delivered to the supervisor of the town a verified statement pursuant to section 132 of the Highway Law (Chap. 568, Laws of 1890) of the expenses incurred in the erection and repair of bridges in the town during the previous year, showing that the county was indebted to the town in the sum of $1,840.03, that being one-third of the excess of said expenditure above one-sixth of one per cent of the total assessed valuation of said town for the year 1893.  The supervisor of the town, pursuant to section 133 of the Highway Law, presented the statement to the board of supervisors at its session in November, 1893, and the board disallowed the claim on the ground that it was not, nor was any part thereof a legal charge against the county.

On the return of the order to show cause, the board of supervisors appeared by counsel, and after hearing the parties the peremptory writ was granted requiring the board to convene and levy upon the taxable property of the county a sum sufficient to pay its share of such expenditure.  The main controversy is as to the legal liability of the county of Steuben to pay any part of the cost of the bridge over the Canisteo river, the bridge being wholly within the town of Addison, and not upon its boundary.  Section 130 of the Highway Law is as follows:

"Section 130. Where town or county expense.  The towns of this state, except as otherwise herein provided, shall be

1895.]    People ex rel. Root *v.* Bd. Supervisors.    **109**

N. Y. Rep.]                    Statement of case.

liable to pay the expenses for the construction and repair of its public free bridges, constructed over streams or other waters within their bounds, and their just and equitable share of such expenses when so constructed over streams or other waters upon their boundaries, except between the counties of Westchester and New York; and when such bridges are constructed over streams or other waters forming the boundary lines of towns, either in the same or adjoining counties, such towns shall be jointly liable to pay such expenses, except that when the whole expense in any one town, for any one year, for the construction, care, maintenance, preservation and repair of its bridges, shall exceed one-sixth of one per centum on the assessed valuation of the taxable property of the town for that year, the county in which such town is located, shall then pay not less than one-third part of such excess. Each of the counties of this state shall also be liable to pay for the construction, care, maintenance, preservation and repair of public bridges, lawfully constructed over streams or other waters forming its boundary line, not less than one-sixth part of the expenses of such construction, care, maintenance, preservation and repair."

Section 131 of the Highway Law, which was repealed by the County Law (Chap. 686 of the Laws of 1892), authorized the board of supervisors, when it should appear that any town will be unreasonably burdened by erecting or repairing any necessary free bridge "in such town or on its borders," to cause a sum not exceeding $2,000 in any one year, "in addition to the amounts provided for in the last preceding section," to be raised and levied by the county to pay such portion of the expense of such bridge as the board may deem proper. Section 63 of the County Law took the place of section 131 of the Highway Law repealed. Section 63 is as follows: " County aid to towns for the construction and repair of bridges. If the board of supervisors of any county shall deem any town in the county to be unreasonably burdened by its expenses for the construction and repair of its bridges, the board may cause a sum of money not exceeding $2,000 in any

one year to be raised by the county and paid to such town to aid in defraying such expenses."

Other facts are stated in the opinion.

*M. Rumsey Miller* for appellant. Mandamus will not issue in cases of doubtful right. The courts only allow the remedy to be resorted to when a clear legal right is made to appear and when there is no other adequate or legal means to obtain it. (*People ex rel.* v. *Bd. Suprs.*, 107 N. Y. 235, 239; *People ex rel.* v. *Asylum*, 122 id. 190, 196; *People ex rel.* v. *Bd. Suprs.*, 64 id. 600, 604; *People ex rel.* v. *Leonard*, 74 id. 443, 447; *People ex rel.* v. *Hayt*, 66 id. 606.) The papers or proof presented to the board of supervisors as basis of its action were not sufficient to authorize (much less to compel) the board of supervisors to levy the tax. They did not comply with section 132 of chapter 568 of Laws of 1890. (*Flynn* v. *Hurd*, 118 N. Y. 19, 26, 27, 28; *People ex rel. Everett* v. *Bd. Suprs.*, 93 id. 397, 403, 404; Laws 1890, chap. 568, §§ 10, 11, 12, 130.) Mandamus should not issue because no proof was presented to the board that the certificate of the state engineer and surveyor under section 145 had been made and because no such certificate had in fact been made. (*Grant* v. *Smith*, 46 N. Y. 93, 96, 97; *Bangs* v. *Strong*, 7 Hill, 250; *Calvo* v. *Davis*, 8 Hun, 222; 73 N. Y. 211.) Mandamus would not lie in this matter because the board acted on the claim. They received the claim, referred it to the proper committee, it considered it and reported to the board, and they rejected the claim. (*B. C. Cemetery* v. *City of Buffalo*, 46 N. Y. 506, 509; *Hospital* v. *Mayor, etc.*, 84 id. 108, 115; *People ex rel.* v. *Comrs.*, 76 id. 64, 73; *People ex rel.* v. *Barnes*, 44 Hun, 574, 576 · *People ex rel.* v. *Leonard*, 74 N. Y. 443, 445, 447.) The Highway Law does not compel the county to raise one-third of the excess in a year in which the excess has not been contributed to by the construction of a bridge upon a stream forming the boundary line of the town, and it does not compel the county to pay when the excess is caused alone by the construction and repair of bridges con-

structed over streams or other waters within the bounds of the town, and hence mandamus should not issue.   (§ 130, chap. 568, Laws of 1890 ; Laws of 1883, chap. 346 ; Laws of 1869, chap. 855 ; 2 R. S. 1214 ; Laws of 1857, chap. 615 ; Laws of 1838, chap. 314 ; Laws of 1849, chap. 104 ; 2 R. S. [7th ed.] 1262, §§ 119, 120, 121 ; *Hill* v. *Bd. Suprs.,* 12 N. Y. 52 ; *B. C. Cemetery* v. *City of Buffalo,* 46 id. 506 ; *R. Hospital* v. *Mayor, etc.,* 84 id. 108 ; *People ex rel.* v. *Comrs.,* 76 id. 64 ; Laws of 1892, chap. 686 ; *Huggins* v. *Riley,* 125 N. Y. 88, 91 ; *Mather* v. *Crawford,* 36 Barb. 564, 565, 566.)   The act, if it compels the county to levy any tax upon the other towns or cities to pay any part of the expense of bridges within the borders of another town, is in conflict with the provisions of section 11 of article 8 of the Constitution. (Laws of 1890, chap. 568, §§ 3, 4, 9, 12 ; *Hill* v. *Bd. Suprs.,* 12 N. Y. 52 ; *In re Flatbush,* 60 id. 398 ; *People ex rel.* v. *Kelly,* 76 id. 475 ; *In re Mayor, etc.,* 99 id. 569.)   The bridge in question, upon which the expense of $6,265 was claimed, was not a bridge of any class mentioned in section 130 of the Highway Law.   (Laws of 1873, chap. 200 ; Laws of 1870, chap. 291 ; Laws of 1884, chap. 308 ; Laws of 1887, chap. 513 ; Laws of 1880, chap. 308, § 2 ; Laws of 1877, chap. 344, §§ 1, 2 ; Laws of 1866, chap. 770, § 1 ; Laws of 1878, chap. 377, §§ 2, 3.)   If any writ should issue in this case it should be an alternative writ.   (Laws of 1892, 2183, §§ 10, 11, 12 ; *W. I. B. Co.* v. *Barrett,* 1 N. Y. S. R. 600 ; *Birge* v. *B. B. Co.,* 133 N. Y. 477 ; Code Civ. Pro. § 2070 ; *People* v. *R., W. & O. R. R. Co.,* 103 N. Y. 95, 105.)

*John F. Parkhurst* for respondent.   The county is liable to pay one-third of the total bridge expenditure of any town for bridges wholly within the town or otherwise in excess of the one-sixth of one per cent.   (Laws of 1890, chap. 568, §§ 130, 131.)   An inspection by the state engineer was not necessary.   (Laws of 1890, chap. 568, §§ 132, 133.)   The fact that an itemized statement by the highway commissioner was not filed with the supervisor until after November first does

not relieve the county of its obligation to pay this sum. (*In re N. Y. P. School*, 47 N. Y. 557.)

ANDREWS, Ch. J. The important question in this case is whether, under the Highway Law, a county is bound to contribute to the expense of a free public bridge constructed by a town wholly within its bounds, and not crossing border lines, when the whole cost exceeds one-sixth of one per centum on the assessed valuation of the taxable property of the town. The question depends upon the true construction of section 130 of the Highway Law (Chap. 568 of the Laws of 1890). The courts below have answered this question in favor of the town and against the county. It is claimed in support of this conclusion that the reasonable construction of the section makes a county liable to pay one-third of the total bridge expenditure of any town in any one year, for bridges wholly within the town or otherwise, in excess of the one-sixth of one per cent on the assessed valuation of the property of the town. It is on the other hand contended in behalf of the county of Steuben, that the section in question imposes no duty upon a county to contribute to the expense of erecting a bridge which is wholly within a town, but that the compulsory clause in the section applies only to bridges on streams which divide towns in the same county, or towns in different counties. In other words, that the right to demand contribution from the county only exists when the bridge crosses boundary lines either of towns or counties, or both.

At the time of the passage of the act of 1890 the compulsory obligation of a county to aid in the construction of bridges was limited to bridges across county boundaries. From the foundation of the state government the duty of maintaining highways and bridges has been cast on the towns, and not, as in England, upon counties. But from time to time special statutes were passed changing the rule in special cases. (See *Hill* v. *Supervisors, etc.*, 12 N. Y. 52.) The legislature also recognizing the hardship which would frequently arise in

imposing the whole burden of maintaining a bridge upon a par-
ticular town, at an early day authorized boards of supervisors
to grant relief in their discretion to an overburdened town to
the extent of one thousand dollars a year, and to put upon the
county a charge to that extent for the benefit of a town.
This power, first given by chapter 186 of the Laws of 1801,
the exercise of which was made subject to revision by the
Court of Common Pleas on application of a commissioner of
highways dissatisfied with the determination of the super-
visors, was subsequently confirmed and continued by the
Revised Laws of 1813 (Vol. 2, p. 282, § 33), and later by the
Revised Statutes (1 Rev. St. 524, § 119 *et seq.*).   By chapter
482 of the Laws of 1875 a further advance was made for the
relief of towns, and, in case of a bridge crossing a county line,
each of the counties interested was made absolutely liable
to pay one-sixth of the expense thereof.   This brief
reference to the prior legislation shows that when the High-
way Law of 1890 was enacted the obligation rested upon
the towns to construct bridges, whether wholly within the
town or connecting two towns within a county, or towns in
different counties, and that no compulsory obligation rested
upon a county to aid in constructing bridges, except in the
single case of a bridge crossing a county line.   In the case
of a bridge wholly within a town, or connecting two towns in
the same county, the board of supervisors possessed discre-
tionary power to aid to the extent of $1,000 a town which it
deemed overburdened.   The Highway Law of 1890 consoli-
dated and revised the prior legislation of the state upon the
subject of highways.   It was not strictly a consolidation of
the prior statutes.   New provisions were engrafted on the
antecedent law for the purpose of improving the highway
system.   It is conceded that section 130 enlarged the pre-
existing liability of a county by imposing an absolute obliga-
tion upon the county to pay a proportion of the cost of a
bridge across the border line of two towns in the same county,
in case of an excess of cost to each town beyond one-sixth of
one per cent of the assessed valuation of the property therein.

SICKELS—VOL. CI.    15

But it is insisted that the obligation was not imposed in respect of a bridge wholly within a town, however large an expenditure might be required for its construction. As to a town so situated it is insisted the only resource is an application to the discretion of the board of supervisors. It is difficult to suppose that a construction of section 130, which imposes an imperative obligation upon a county, in case two towns in the same county are interested in the bridge, each of which must bear its equal share of the burden, and frees it from obligation, when a single town happens to be traversed by a stream, not upon its boundary, over which a bridge is required, could have been intended by the legislature. If any greater measure of relief was required than was given under prior legislation, the single town upon which the duty to build a bridge alone rests, would seem to have the strongest claim to the consideration of the legislature and of the county. The section is not free from obscurity. It recognizes in the first clause the general principle of our legislation, that the construction of highways and bridges is a town duty and charge, but the declaration of liability is coupled with the words, "except as herein otherwise provided." There is no exemption from liability to be found in the section, applicable to the case of a bridge constructed within a town, unless the obligation imposed on the county by the subsequent clause applies to such a case. Upon reading the first clause with the words of exemption, it would naturally be expected that there would subsequently be found some exemption from liability which would furnish a reason for their insertion. There is plausibility in the contention that the words in the subsequent clause, "except that when the whole expense in any one town for any one year, shall exceed," etc., relate exclusively to the matter immediately preceding, namely, bridges constructed on boundary lines. But the words of the exception are very general and comprehensive. The county is to be liable "when the whole expense to any one town" shall exceed the sum stated. There is no discrimination in the language between the towns, or as to the character of the bridges. We think

that the obscurity arising from punctuation and the arrangement of the clauses is fairly dispelled by a consideration of the whole section and the presumed legislative purpose, and by the consideration that the construction claimed by the county would lead to an unjust discrimination. The general scope of the section is, we think *first,* to declare the general liability of towns in respect of highways and bridges; *second,* to declare the liability of towns as between themselves as to bridges constructed upon boundary lines; *third,* to impose upon the county a fixed liability based upon the relation between the cost of bridges and their maintenance, and the taxable values of the town irrespective of boundary lines; and *fourth,* to impose an added liability as to bridges erected on county lines. Section 131, since repealed, but which may properly be referred to in aid of the construction of section 130, strengthens the interpretation given by the courts below to that section. It authorized the board of supervisors to levy upon the county a sum, not exceeding two thousand dollars in any one year, to relieve any town unduly burdened by the erection of a bridge, and declares that this is "in addition to the amounts provided for in the last-preceding section." The additional aid was authorized to be given to any town, and not to border towns or towns divided by a stream only. The language of section 131 implies that the towns had received benefits under section 130, and this aid was to be "in addition." We find nothing in the County Law of 1892 which affects the construction of the act of 1890.

There are some technical questions raised by the defendant: (1) It is claimed that the bridge being within the village of Addison, although the village is within the town, it was not a town bridge within the statute. The answer is that by the village charter (Laws of 1873, chap. 200) the bridges over the Canisteo river and Tuscarora creek are excepted from the jurisdiction of the village authorities and are placed under the direction and control of the commissioners of highways of the town, "to the same extent as if the act had not been passed." (2) We think the claim presented to the supervisors

sufficiently indicated that the claim was made in behalf of the town of Addison for an expenditure made by the town in erecting a free public bridge in the village and town of Addison under the authority of the town. If there was any technical informality, or any incompleteness in the proof presented to the board of supervisors, the rejection of the claim was placed on the broad ground that the claim was not one which in its nature created a legal charge against the county.

We find no error which calls for a reversal of the order, and upon the main and important question we concur with the courts below.

The judgment and order should be affirmed, with costs.

All concur, except HAIGHT, J., not sitting.

Judgment affirmed.