C. L. McPEETERS et   . tax-payers, v. MILES H. BLANKENSHIP, Treasurer of Yancey County.

(Decided December 23, 1898).

*County Commissioners—Public Bridges Across County Lines—County Warrants.*

1. County bridges, across county lines, must be authorized by both counties and built at joint expense—*The Code,* Section 707 (10). amended by the Acts, 1895, Chapter 135, Section 2.

2. Where a county bridge is a necessity to one county alone, across a boundary stream, and the adjoining county refuses to join in the construction an enabling Act of the Legislature must be obtained.

3. Invalid county orders, warrants and bonds, although transferred to an innocent purchaser for value, and without notice, are open to all defenses against the original holder, and have not the protection that attaches to mercantile paper, even when negotiable in form—*Wright* v. *Kinney*, at this term.

APPLICATION for injunction to enjoin the County Treasurer of Yancey County from paying certain county warrants issued for the construction of a public bridge, heard before *Starbuck, J.,* at CHAMBERS in Yancey County on 27th July, 1898.

The Commissioners of Yancey County, deeming a public bridge necessary across Toe River, the dividing boundary between Yancey and Mitchell Counties, applied to the Commissioners of Mitchell County to join them in the construction, which application was refused, and the Commissioners of Yancey County made a contract for the construction of the bridge at the expense of Yancey County alone at the price of $4,000. The bridge was built by the contractor, an iron bridge, and was received by the Commissioners who authorized the issue of warrants on the Treasurer of Yancey County for the amount of $4,000.

It was to enjoin the payment of these warrants that the plaintiffs, as tax payers, applied for the injunction, on the ground that they were invalid because issued *ultra vires.*

His Honor heard the application upon affidavits not inconsistent with the facts stated, and declined the injunction. The plaintiffs excepted and appealed.

*Mr. J. M. Gudger, Jr.,* for plaintiffs (appellants).
*Messrs. Hudgins & Watson,* for defendant.

CLARK, J.: *The Code,* Section 707, sub-section 10, amended by the Laws of 1895, Chapter 135, Section 2

(which strikes out the proviso) gives County Commissioners power "to construct and repair bridges in the county and to raise by tax the money necessary therefor; and when a bridge is necessary over a stream which divides one county from another, the Board of Commissioners of each county shall join in the construction or repairing of such bridge, and the charge thereof shall be defrayed by the counties concerned in proportion to the number of taxable polls in each." *The Code*, Section 2014 giving the County Commissioners power "to appoint where bridges shall be made" is to be construed in connection with Section 707 (10) and is not in conflict with it.

The Commissioners of Yancey County deemed that a bridge was necessary over the Toe (or Estatoe) River at the point where the public road from Burnsville, the county seat, to Johnson City, Tennessee crosses it, as that road is much used by citizens of the county, and rises of water in the river are not infrequent. The river at that place is the dividing line between Yancey and Mitchell Counties, but as the road in question passes through a very narrow strip of Mitchell County, lying between the river and the Tennessee line, the Commissioners of the latter county refused the application of the Commissioners of Yancey to join in building the bridge, upon the ground that the interest of Mitchell County in having a bridge at that point was too slight to justify them in sharing the expense. Thereupon the Commissioners of Yancey assumed the entire expense and caused an iron bridge to be constructed at a cost of $4,000 payable in five annual instalments. The bridge has been completed, and has been accepted by the Commissioners, and five warrants for $800 issued to the contractor, the first of which falls due this year. This is

an action by sundry tax-payers to restrain the County Treasurer from paying the warrants, on the ground that the erection of the bridge was *ultra vires* and the warrants are not a valid indebtedness of the county.

It would have been more seemly and just if some tax-payer had enjoined the erection of the bridge in the beginning, but there is no estoppel in matters of this kind.   The County Commissioners have only such powers as are conferred by statute, or plainly incident thereto, and in this matter of building bridges over a stream dividing one county from another, their powers are plainly prescribed and restricted.   The Commissioners of Yancey had no power to build the bridge across such boundary stream and throw the entire expense upon Yancey County, nor to build it at all in the absence of the joining of the Commissioners of Mitchell, in which county half of the bridge is situated.   It was held in *Greenleaf* v. *Commissioners of Pasquotank*, at this term, that the County Commissioners could not accept a bridge as a gift to the county, to be maintained at its expense, when at one end of the bridge the road was a private road and not under county control.   Clearly therefore the County Commissioners cannot build a bridge at county expense when half of it will be in another county, and the road at the other end will not be under their control, except in the manner prescribed by statute, unless a special statute is procured to authorize it. If the bridge is a necessity to Mitchell County also, and the refusal of its Commissioners is arbitrary, possibly a mandamus might have issued to compel them to join in the erection of the bridge, but that point is not before us.   If the bridge is a necessity to Yancey County alone, the Commissioners of that county, upon the refusal of the Commissioners of Mitchell to join in its construction,

should have applied to the Legislature for a special Act authorizing the County of Yancey to construct the bridge at its sole expense. Certainly in the absence of such legislative authority the warrants are invalid and their payment must be restrained. *Washer* v. *Bullitt*, 110 U. S., 558 and *Bullitt* v. *Washer*, 130 U. S., 142, relied on by defendant, differ from this case in that, there, the necessity for the bridge was adjudged and the contract ordered by the county court, presided over by the county Judge, and the Justices of the county, and afterwards ratified by judicial decree. But the County Commissioners of this State have not been held invested with any common law power to exceed a restricted authority conferred on them by statute, and in *Washer* v. *Bullitt*, *supra*, the Court is careful to add: "We find nothing in the decisions of the Court of Appeals of Kentucky contrary to this," in recognition of the right of the highest court of the State to construe the powers conferred by its statute upon its own officers. *Wilson* v. *N. C*, 169 U. S., 586, reprinted in 122 N. C., 1108 A (at p. 1108 c).

Whatever hardship there is on the contractors, we cannot recognize any power in public officers to bind the public by contracts not authorized by law. If the warrants have passed for value and without notice to subsequent holders, they are equally invalid and unenforcible in their hands, as the warrants, orders and bonds of municipal corporations are not entitled to the protection that attaches to mercantile paper, even when negotiable in form. *Wright* v. *Kinney*, at this term.

Whether the Legislature (which will shortly be in session) may not, with or without a popular vote of the

county, validate the warrants, is a matter which the holders may consider, but it is not now before us.

The injunction will issue as prayed.

Reversed.