## City of Clinton v. Hickman County.

(Decided November 5, 1914.

Appeal from Hickman Circuit Court.

1. **Bridges—In City—When County Must Contribute to Building of.—** When a city of small population builds a bridge as a part of the street, and this street connects with the public roads of the county, and the bridge is necessary for the convenience of the people of the county and to enable them to attend court and other public places, the county may be required to contribute its fair proportion towards the erection of the bridge, to be determined on the basis of the population and wealth of the county and the county travel over the bridge as compared with the population and wealth of the city and travel by its inhabitants over the bridge.

2. **Bridges—In City—County to Contribute to Cost of Erection.—** When a city builds bridges within its limits, and these bridges are necessary for the convenience of the people of the county, the county may be required to contribute to the cost of building them, although no request or demand was made of the county authorities to assist in the construction of the bridges before

they were built; but if a city builds a more expensive bridge than is necessary for the ordinary travel of the county, the county is not to be charged with any part of this unnecessary expense.

E. T. BULLOCK for appellant.

J. D. VIA, L. L. HINDMAN and J. M. BRUMMAL for appellee.

OPINION OF THE COURT BY JUDGE CARROLL—Reversing.

Clinton, the county seat of Hickman County, is a city of the fifth class and has a population of about 1,600. Running through the city there is a stream of water called the "Town Branch," and in 1910 and 1912 the city built across this branch four bridges as parts of streets of the city that crossed the branch. The cost of these bridges to the city was $1,237.69.

After the bridges had been constructed, the city presented to the fiscal court of Hickman County a bill for $618.85, being one-half the cost of the bridges, and demanded payment of this amount from the fiscal court. The fiscal court declined to allow the claim or any part of it, and on appeal to the circuit court by the city, the claim was there disallowed and this appeal prosecuted.

The city rests its right to contribution from the county upon the ground that the bridges are parts of streets that connect with the public roads of the county, and are necessary to enable persons living in the county to attend court and election, transact business in the clerks' offices, and trade with the stores and other like places in the city.

The county resists the claim upon the theory that these bridges were erected for the convenience and benefit of the people of the city and not of the county. That they are not necessary to enable the people of the county to attend public duties in the city of Clinton or transact business therein, and that as no demand or request was made of the fiscal court previous to the erection of these bridges to contribute anything toward their construction, the county can not in any event be made liable for any part of the expense of the building of these bridges.

The circuit judge, in dismissing the suit of the city, did not state the reasons that influenced his action, but we infer from briefs of counsel that he was largely controlled by the fact that as the city did not request or demand, before the erection of the bridges, that the county contribute anything towards their construction

tnis suit was an effort on the part of the city to make the county liable on an implied contract.

Questions like this have been considered by us in the cases of Leslie County v. Wooten, 115 Ky., 850; Nelson County v. City of Bardstown, 124 Ky., 636; City of Flemingsburg v. Fleming County, 127 Ky., 120.

In the Leslie County case it appears from the opinion that the town of Hyden, the county seat of Leslie County, contains about 300 inhabitants, and lies on both sides of Middle Fork. That a county road crossed Middle Fork within the city limits by means of a bridge which was built many years before the suit, partly by private subscription and partly by donations from the fiscal court. That this bridge was swept away by high water, thus derprving the city and the traveling public of the county of a safe and convenient means of crossing the river and making the highway at this point practically useless. That the attention of the fiscal court was called to the destruction of the bridge and the necessity of its being rebuilt, but it declined to do anything upon the ground that it was the duty of the town of Hyden to rebuild the destroyed bridge. Upon the refusal of the county to act, suit was brought by Wooten and others against the fiscal court, asking a writ of mandamus to compel the fiscal court to rebuild the bridge. Upon facts stated in the opinion, the court reached the conclusion that the bridge constituted a part of the public highways of the county and it was the duty of the fiscal court to rebuild it, and the writ of mandamus was awarded.

In the Nelson County case, as shown by the opinion, a controversy arose between the city of Bardstown and the county of Nelson as to their respective duties in regard to maintaining a bridge situated on the boundary line between the city limits and the county that previous to this controversy had been a part of one of the turnpikes of the county. Under the facts stated in the opinion it was held that as the bridge was necessary for the use of the people of the county, the county and not the city should maintain it.

In the Flemingsburg case a bridge located within the city limits of Flemingsburg became unsafe and dangerous for public travel, and the fiscal court having refused after demand made to assist in the erection of a new bridge, the city built one and sought to recover from

the county the cost of its construction. In considering the case, the court said:

"Is the bridge upon one of the thoroughfares or highways of the county, and is it necessary for the use of the people of the county in going to and from the public places and buildings within the county? If so, the county, in cities the size of Flemingsburg and smaller towns, should be required to bear its proportion of the expense of maintaining the bridge or erecting a new one. * * * It is a matter of common knowledge that in a large number of the smaller towns of the State the main streets are parts of the public highways of the county, and are used as much, if not more, by the people of the county than they are by the inhabitants of the city; and in such cases, where bridges are needed as parts of the public highways, the county should be required to erect or contribute to their erection. Whether the county should bear the whole or only a proportionate part thereof must be left to be determined by the facts and circumstances of each case. * * *

"A city or town will not be permitted to erect a more expensive structure than is necessary for safe and convenient public travel, and charge the county with any part of the cost thereof over and above the amount necessary to erect a safe and sufficient bridge. If the bridge erected by the city cost more than was necessary to erect a structure safe, sufficient and convenient for public travel, the city alone must bear the burden of this, to the county, unnecessary expense. The county will only be required to pay its fair proportion of the cost of such a bridge as is herein indicated. This proportion must be determined by the lower court upon due consideration of the population and wealth of the county as compared with the population and wealth of the city, taken in connection with the proportion of travel over the bridge by the inhabitants of the city as compared with the travel over it by the people of the county."

It will, therefore, be seen that in these cases, and especially in the Flemingsburg case, it was laid down that a county might be required to contribute its fair proportion to the maintenance or the erection of bridges within the limits of small towns and cities when these bridges were situated on streets that connected with public highways of the county and were necessary for the convenience and safety of the people of the county

in going to and from the courthouse and other public places.

With this rule in mind, turning now to the facts of the case, we think, although there is some conflict in the evidence, that the bridges built by the city of Clinton were parts of streets that connected with the highways of the county, and were used by a great many people in the county having business with the public offices situated in the city of Clinton. That, if not indispensably necessary, they were at least very convenient for the people of the county; indeed, as much so as are bridges that are seen everywhere on the public highways of the State at points where they cross water-courses; and although many of these water-courses might be crossed without bridges, it will not be questioned that bridges are regarded as an essential part of public roads.

On the record before us we think the county of Hickman should contribute its fair proportion towards the erection and maintenance of these bridges, unless it be that the city is denied the right to contribution because it failed to make demand of the fiscal court for contribution before the erection of the bridges, or lost its right to contribution by not seeking, in mandamus proceedings, to compel the fiscal court to assist in the construction of these bridges before they were erected.

Putting aside for a moment the question whether the city lost its right to contribution by its failure, in seasonable time, to make demand of the fiscal court or take such action as might be necessary to require it to contribute to the erection of these bridges, we find that it is strongly insisted by the county that these bridges are wider and more ornamental than is necessary for practical use, and cost the city a great deal more than the county would have expended in the construction of substantial and sufficient bridges over this stream if it had crossed one of the highways of the county.

As said in the authorities referred to, the county can only be required to pay its proportionate part of the cost of erecting and maintaining substantial bridges sufficient for ordinary travel and is not burdened with the cost of ornamentation and the extra width of bridges that city authorities might consider proper and advisable to erect. In other words, if safe, sufficient and substantial bridges for ordinary uses could have been erected at the points where these bridges stand for less than the city paid, the county should only be charged

with its proportionate part of the cost of such structures, and the city must bear alone the burden of the extra expense it incurred in making the bridges wider and more ornamental than was necessary for ordinary traffic by the people of the county. What the cost of a suitable and sufficient bridge would be, and what part of this cost the city should pay, and what part the county should pay, depend, as said in the Flemingsburg case, on the facts of each particular case.

Coming now to the effect of the failure of the city to make demand on the fiscal court to aid in the erection of these bridges before they were built, we are confronted with the argument of counsel for the county that this suit is an effort on the part of the city to make the county liable upon an implied contract, and are referred to a number of opinions written by this court holding that a county can not be made liable on an implied contract: Perry County v. Engle, 116 Ky., 594; Floyd County v. Allen, 137 Ky., 575; McDonald v. Franklin County, 125 Ky., 205; Owen County v. Walker, 141 Ky., 516; Rowe v. Alexander, 156 Ky., 507.

If it were true that this was an attempt to subject the county to liability on account of an implied contract, we would at once say that it could not be done. But the city is not seeking to charge the county on an implied contract. The city and the county were both under a duty to erect these bridges as they were at the same time parts of the streets and public roads, and when the city, in the performance of this duty, did erect them, there at once arose in its behalf a cause of action against the county for contribution. This cause of action does not rest on the ordinary doctrine of implied contract but grows out of the relation between the city and the county in respect to the construction of such bridges as are necessary for the use and convenience of the people of both the city and the county. These two municipal governments act independently of each other in the conduct of their affairs, and yet there are certain duties common to both that may be performed either separately or jointly. The city could not look to the county for contribution unless the bridges were needed by and useful to the people of the county, but if they were needed and the people of the county use them, the county should pay a part of the cost of construction. There is no substantial difference between this case and the Fleming County case. If the city could have compelled the county by

mandamus proceedings to contribute to the erection of these bridges, and we think there can be no doubt that it could do this under the authority of the Leslie County case, it would seem to follow that, after erecting the bridges, the city may maintain an action to compel the county to contribute its part. There is no sound distinction between the right of the city to maintain an action like this and its right to proceed by mandamus to compel the county to do its part. Whichever of these remedies might be adopted by the city, the liability of the county would be the same. If the city had proceeded by mandamus, the county would only have been compelled to pay its just part of the expense, and that is all it can be compelled to pay in this proceeding. We agree with counsel for the county, that when a city erects bridges with the expectation of asking the county to contribute, the city authorities should consult with the county authorities in advance of their construction, so that both bodies may have a voice in the character and cost of the contemplated work. But if the city fails to do this, the county is not prejudiced, for the measure of its contribution is the same.

But on a return of the case the lower court should allow upon request either or both parties to take additional proof on the issues as to the necessity for the bridges as parts of the highways of the county, and their costs; and when the case is submitted if any or all of them are found to be necessary for the convenience and use of the people of the county, the county should be required to pay its propr part of the expense of bridges so found to be necessary at these different places according to the rules laid down in the Fleming County case. But if the court finds that one or more of these bridges are not needed by the people of the county, or are not essential parts of public highways of the county, the county should not be required to contribute anything towards the erection of the bridge or bridges found not to be necessary or found not to be essential parts of the public highways of the county. If, as some of the evidence tends to show, these bridges are wider than the needs of the county require, or than the width of the customary county bridge, the county should not be required to contribute any part of the expense incurred in making this additional width. Nor should it be required to contribute anything towards fixtures connected with the bridges for

ornamental purposes or that do not contribute anything towards its safety or substantial character.

Wherefore, the judgment of the lower court is reversed, with directions to proceed in conformity with this opinion.