[Civ. No. 1790.   Third Appellate District.—January 25, 1918.]

## CITY OF REDDING (a Municipal Corporation), Appellant, v. COUNTY OF SHASTA (a Body Politic and Corporate of the State of California), Respondent.

COUNTIES—CONSTRUCTION OF BRIDGE BY CITY—LIABILITY OF COUNTY.— A county cannot be compelled by the provisions of section 2714 of the Political Code to pay. a part of the cost of constructing a bridge built by a city over a river which forms the boundary line between the city and a road district of the county, where the board of supervisors expressly refused to participate in the construction, such refusal being a determination against its necessity as to the county, and the city's determination of necessity not binding the county.

APPEAL from a judgment of the Superior Court of Shasta County.   Wm. M. Finch, Judge Presiding.

The facts are stated in the opinion of the court.

C. H. Braynard, and Braynard & Kimball, for Appellant.

O. M. Chenowith, and A. M. McCoy, for Respondent.

CHIPMAN, P. J.—In the first cause of action it is alleged that defendant is indebted to plaintiff in the sum of $28,-235.53 "for money paid out and expended by said plaintiff for the use and benefit of said defendant in the construction of a concrete bridge over and across the Sacramento River at Reid's Ferry and in said City of Redding and in said County of Shasta, and which said bridge crosses the line between said City of Redding and Road District Number Four (4) of said County of Shasta, and which said bridge connects and is a part of the public highway leading from and within said City of Redding on the south bank of said Sacramento River to the public highway in Road District No. 4 of said County of Shasta, leading from the north bank of said Sacramento River to the towns of Kennett, Buckeye, Baird in said · Shasta County and to other parts of said Shasta County for the purpose of transportation of persons and property and as a means of communication and for promoting the convenience of the public.   That the building and construction of said bridge as a part of and so connecting

said public highway was necessary and essential for the use and convenience of the inhabitants of said City of Redding and of the inhabitants of said County of Shasta and of the public in general.''

It is then alleged by proper averments that plaintiff duly presented its said claim to defendant for allowance and the same was rejected.

For a second cause of action, it is alleged that on June 9, 1913, plaintiff duly and regularly determined that the public interest and the public necessity of the plaintiff and its inhabitants for the purpose of transportation of persons and property, and as a means of communication and for promoting the convenience of the public, demanded the acquisition and construction of a certain municipal improvement and public utility, namely, ''a public free bridge over and across the Sacramento River at Reid's Ferry in said City of Redding and in said County of Shasta, by resolution duly passed and adopted by said Board of Trustees at a regular adjourned meeting thereof held in said City of Redding on said 9th day of June, 1913, a copy of which said resolution is hereunto attached, marked 'Exhibit B,' and made a part of this complaint.'' It was stated in said resolution ''that the board of trustees of said City of Redding hereby determines that the public interest and the public necessity of said City of Redding, and the inhabitants thereof, for the purpose of transportation of persons and property, and as a means of communication, and promoting the convenience of the public, demand the acquisition and construction of a certain municipal improvement and public utility,'' to wit, the public free bridge hereinbefore referred to; ''the total cost of said improvement and public utility being hereby estimated at the sum of $60,000.00.'' It was further determined that the cost of said improvement ''will be too great to be paid out of the ordinary annual income and revenue of said municipality,'' and the ordinance provided for the calling of a special election to submit the question of incurring said indebtedness to the electors of the said city of Redding. It is then alleged that prior to the passage of said resolution, to wit, on January 8, 1913, plaintiff, by its board of trustees, ''conferred with said defendant, by and through its board of supervisors, at the chambers of said supervisors in said City of Redding, for the purpose and object of determining the

proportion of the cost of constructing said bridge to be paid by said plaintiff and said defendant and that it was impossible by conference or otherwise to determine the same for the reason that said defendant by and through its said board of supervisors then and there refused to participate in the erection or construction of said bridge or to contribute or agree to contribute any part of the cost of erecting or constructing the said bridge."

It further appears from the complaint that said proposed bridge and the said bridge as constructed crosses the line between the said city of Redding and road district No. 4 of said county of Shasta, "and connects and is a part of the public highway leading from and within said City of Redding on the south bank of said Sacramento River to the public highway in road district No. four of said County of Shasta, leading from the north bank of said Sacramento River to the towns of Kennett, Buckeye and Baird in said Shasta County and to other parts of said Shasta County for the purpose of transportation of persons and property and as a means of communication and for promoting the convenience of the public."

It is then alleged that in April, 1914, plaintiff duly adopted plans and specifications for the building of said bridge, and thereafter and on June 6th duly and regularly entered into a contract in writing with the Chico Construction Company for the building of said bridge, which said bridge was fully completed on April 5, 1915, and was thrown open to the public for use on August 15, 1915, and ever since has been and now is used by the public as a public free bridge across the Sacramento River at Reid's Ferry "as a means of communication and for promoting the convenience of the public and ever since said last mentioned time the said County of Shasta and the inhabitants thereof have enjoyed and now enjoy all of the benefits of said bridge"; that the construction of said bridge "as a part of and so connecting said public highway was necessary and essential for the use and convenience of the inhabitants" of said city and county, and the public in general; that the cost of the construction of said bridge was the sum of $56,471.06, "which has been fully paid by plaintiff and the proportionate share of said defendant of said costs of the construction of said bridge was and is the sum of $28,235.53." That on September 7, 1915, plaintiff

by its board of trustees and by resolution duly passed determined the indebtedness due from defendant to plaintiff for the construction of said bridge to be the said sum of $28,235.53.

Averments follow showing that the plaintiff duly prepared its demand for the allowance of said claim and presented the same to defendant for payment at a regular session of the said board of supervisors, and that the said board, by vote duly made and entered, rejected and disallowed the said claim and the whole thereof, and the same is owing and unpaid from said defendant to plaintiff.

A general and special demurrer to the complaint was sustained, granting plaintiff ten days to amend. Plaintiff declined to amend the complaint and thereupon judgment was entered in favor of the defendant that plaintiff take nothing by its action, and that defendant have judgment for its costs. Plaintiff appeals from the judgment.

We find embodied in respondent's brief the written opinion of his Honor Judge Wm. Finch, who presided at the trial. In support of his findings the learned judge discusses at considerable length the questions arising under the second cause of action. He disposes of the first count by the following brief statement:

"The first asserted cause of action is attempted to be alleged in the form of the common counts for the sum of $28,235.53 averred to have been paid out and expended by the plaintiff for the use and benefit of the defendant.

"This alleged cause of action is defective in that it is not averred that the alleged moneys were paid out at the request of the defendant, and the demurrer thereto should be sustained.

" 'It is generally necessary, except in the count for money had and received and the count upon an account stated to allege that the consideration of the debt was performed at the defendant's request.' 2 Ency. Pl. & Pr., 1004. 'In order to enable one who has paid money to the use of another to maintain the count for money paid, the money paid must be alleged and shown to have been paid upon the request, express or implied, of the defendant.' 2 Ency. Pl. & Pr. 1012. 'In a declaration upon a promise on a consideration which is past, it is necessary to allege that the act performed or sum paid as performed or paid at the request of defendant, unless

where a beneficial consideration and a request are, necessarily, implied from the moral obligation under which defendant was placed.' 5 C. J. 1397.

"Since it is alleged that the supervisors 'refused to participate in the erection or construction of said bridge or to contribute or agree to contribute any part of the cost of erecting or constructing the said bridge' it would seem that the plaintiff will be unable to so amend its complaint as to state a cause of action, but a court cannot assume that the facts may not be different from those alleged and therefore the plaintiff will be given ten days within which to amend its complaint if so advised."

As before stated, plaintiff declined to amend its complaint and judgment followed for defendant. Plaintiff's counsel argue with apparent confidence that a cause of action was stated in the first count whatever may be said of the second cause of action, and hence it was error to sustain the demurrer on both counts. Their position as stated in their reply brief is, that "regardless of any statute on the subject the County of Shasta is liable to the City of Redding, upon quasi-contract for one-half of the cost of the construction of the bridge," relying upon the cases of *Hunt* v. *City of San Francisco*, 11 Cal. 250, and *Brown* v. *Board of Education*, 103 Cal. 531, [37 Pac. 503]. Special reliance is placed upon *City of Clinton* v. *Hickman County*, 160 Ky. 687, [170 S. W. 11], a case decided by the Kentucky court of appeals. More fully stated, the contention of plaintiff is as follows: "Having been furnished by the city with a full opportunity to join in the erection of this boundary bridge in order to discharge the joint duty of the county and the city to keep this public highway open across the Sacramento River for the use of the public, and the allegation that such bridge was a public necessity and necessary for the convenience of the public being admitted on this demurrer, the county is estopped from claiming that the bridge was not built by the joint action of the county and the city. Thus, on this demurrer, the facts are that the bridge was a public necessity in order to keep open a public highway across a boundary stream and that the county refused to participate in its erection. By refusing to participate in the erection of the bridge, the county waived any right to insist upon the bridge being jointly constructed, and cannot now evade its just liability by claiming

that the bridge was not jointly constructed. Under these circumstances, a beneficial consideration and a request are necessarily implied from the moral obligation under which the county was placed when the bridge was completed and thrown open to the public by the city.''

When, and under what circumstances, an implied liability of one municipality to another municipality will arise, opens a field of discussion which we do not think it necessary to explore. The facts in the case, we assume, are as fully shown in the second cause of action as they can be. Unless plaintiff can recover under the facts there shown and admitted by the demurrer, plaintiff cannot recover at all. Hence, we deem it unnecessary to further consider the sufficiency of the first count. Plaintiff's case must stand or fall upon the facts alleged in its second cause of action.

We find ourselves in accord with the views expressed by the learned trial judge upon the second cause of action and will take the liberty of quoting them:

"This is an action brought by the City of Redding to recover from Shasta County the sum of $28,235.53 alleged to be due as the county's proportionate share of the cost of a bridge across the Sacramento River.

"The river forms the boundary line between the city and Road District No. 4.

"Some three years ago the city trustees duly determined that the public interest and necessity of the city demanded the construction of a free bridge across the river. The trustees thereupon conferred with the supervisors of the county with the object of securing the co-operation of the latter in the construction of a bridge by the city and county jointly. The supervisors refused to participate in the construction of the bridge or to contribute towards the cost thereof. The trustees then proceeded to construct the bridge at the expense of the city and have brought this action to recover from the county one-half of such expense.

"The plaintiff claims the right to enforce contribution under the provisions of section 2714 of the Political Code, which reads as follows: 'If the road overseer of one district, after five days' notice from the overseer of an adjoining district to aid in the repair of a bridge in which each are interested, fails so to aid, the one giving notice may make the necessary repairs, and must be allowed a *pro rata* compensation there-

for by the board of supervisors out of the road fund of the defaulting district. Bridges crossing the line or lines between cities or towns and road districts, or between cities or towns, may be constructed and maintained by the cities or towns and from the road fund of the road district or by the cities or towns into which such bridges extend. Any such bridge may be constructed by contract let as provided by law by either city or town or by the county into which such bridge extends or wherein such bridge is located, and any such city, town or county may contribute toward the cost and expense of the construction or maintenance of such bridge by the appropriation for such purpose of any funds in the treasury of such city, town or county not otherwise appropriated, upon such terms and conditions as may be prescribed by ordinance or resolution of the governing body of such city, town or county aiding in the construction or maintenance of such bridge; provided, that if the proportion to be paid by any such city, town or county cannot be otherwise determined, the cost of construction or maintenance of any such bridge shall be borne equally by the city or town and from the road fund of the road district or by the cities or towns into which such bridge extends. The proceeds of any bonds heretofore or hereafter authorized by the voters of any such city, town or county for the acquisition, construction or completion of any such bridge, or any portion thereof, may be expended or contributed as herein provided.'

"Counsel for the plaintiff contend that the terms of the statute must be construed as mandatory, invoking the familiar rule that where a public body or officer has been empowered to do an act which concerns the public interest it becomes the duty of the public body or officer to do it. There is no doubt as to the correctness of the rule but there is just as little doubt that the rule is not of universal application. Permissive language authorizing official action is often held to be mandatory but on the other hand mandatory language is sometimes held to be permissive only. No hard and fast rule is to be applied in such cases but the court must look to the nature of the power conferred and to the general rules applicable to the construction of statutes. Generally if the act authorized is legislative in character the power is construed as discretionary; if executive it is usually held to be mandatory.

"The legislature has conferred upon the governing boards of the various political divisions of the state authority to determine whether a proposed local improvement is a public convenience or necessity. The determination of such question by the governing board is a legislative act, not subject to review by the courts. 'The act of the board of supervisors in determining whether a street shall be opened or closed, or widened or contracted, or otherwise improved, is a legislative act performed in the exercise of the power which has been conferred upon the municipality by the legislature to enable it to provide for the welfare of its citizens.' *Brown* v. *Board of Supervisors,* 124 Cal. 277, [57 Pac. 82]. 'The legislature having conferred upon the board of supervisors the power to open and close streets "whenever the public interest or convenience may require," the determination by that board of the question whether the public interest and convenience require that streets be closed, is conclusive, and not open to review by the courts.' *Symons* v. *San Francisco,* 115 Cal. 555, [42 Pac. 913, 47 Pac. 453].

"It will probably be conceded that the determination of the question whether the public interest and convenience require that a bridge be constructed across a river is as fully a legislative question as that of opening or closing a street. A county or city cannot be compelled by the courts to bridge every water-course crossed by its roads or streets, or any of them. 'In deciding to erect a bridge a public corporation is exercising discretionary power. Action or non-action in that regard can lead to no liability.' *Coffey* v. *City of Berkeley,* 170 Cal. 258, [149 Pac. 559].

"If the territory on both banks of the river to be crossed were wholly within the city of Redding, the determination of the trustees as to the necessity of a bridge would undoubtedly be conclusive; so that of the supervisors if the location were wholly outside the city. Is the rule different where the two boards are authorized to act jointly?

"If both boards had determined that public convenience required the construction of the bridge no one would contend that such determination was not conclusive. On the other hand, if both boards had determined that the public interest did not require the bridge, that determination would have been equally conclusive.

"The city trustees, in their legislative capacity, determined that the bridge was a public necessity. The supervisors, in their equal legislative capacity, determined that no such necessity existed in behalf of the county.

"Why are not the legislative determinations of such boards conclusive as to their respective jurisdictions, and by what authority is the determination of one board to be held superior to that of the other?

"In considering the question we must not confuse the authority conferred upon a board to construct a bridge with the duty of the board to keep the bridge in repair after its construction. Having in the exercise of their discretion, constructed and opened a bridge, thereby inviting the public to travel over it, the duty of the officers to keep it in good repair is mandatory. Having assumed the burden of maintaining the structure that obligation must not be discharged in a negligent manner.

"Again, the question of the construction by two boards jointly of a new bridge must be distinguished from the obligation of each to maintain a bridge which they had by their voluntary agreement constructed jointly. The joint agreement to build implies an agreement for joint maintenance.

"Most of the cases cited by counsel for the plaintiff had to do with the repair or reconstruction or bridges rather than with the construction of new ones, besides, they are based upon statutes essentially different from ours.

"Thus, the Nebraska statute [Comp. Stats. 1909, c. 78, sec. 88] provided that if either county charged with the joint maintenance of a bridge should refuse to join with the other in making needful repairs, 'it shall be lawful for the other of said counties to enter into such contract for all needful repairs, and recover by suit from the county so in default such proportion of the costs of making such repairs as it ought to pay.'

"The law of Kansas [Gen. Stats. 1909, sec. 7309] provides that where a road is located on a county line, 'all expenses . . . arising from the improvement of any portion of such road, shall be borne jointly by the counties . . . contiguous thereto.' It was held that one county could recover from the adjoining county for one-half the cost of making necessary repairs to a bridge on such a road. *County of Brown* v. *County of Keya Paha,* 88 Neb. 117, [Ann. Cas. 1912D, 790,

129 N. W. 250]; *Dodge County* v. *Saunders County*, 77 Neb. 787, [110 N. W. 756]; *Buffalo County* v. *Kearney County*, 83 Neb. 550, [120 N. W. 171]; *Cass County* v. *Sarpy County*, 72 Neb. 93, [100 N. W. 197]; *Cloud County* v. *Mitchell County*, 75 Kan. 750, [90 Pac. 286].

"Under a New York statute [Laws 1890, c. 568, sec. 130], providing that when the whole expense of constructing a bridge in 'any one town . . . shall exceed one-sixth of one per centum on the assessed valuation of the taxable property of the town . . . the county in which such town is located shall then pay not less than one-third part of such expenses,' it was naturally held that the county was liable for such one-third. *People* v. *Board of Supervisors*, 146 N. Y. 107, [40 N. E. 738].

"Section 256 of the Highway Law of New York [Consol. Laws, c. 25], provides that 'where two towns are liable to make or maintain . . . a bridge, and one of them refuses or neglects to join therein, application may be made to the court to compel the delinquent to act.' The intention of the legislature in this statute is too plain to admit of doubt, and it was held that the court could compel the delinquent town to act. *In re Town of Saratoga*, 160 App. Div. 60, [145 N. Y. Supp. 468].

"Section 250 of the same law provides that when bridges are constructed over streams forming the boundary line of towns, either in the same or adjoining counties, such towns shall be liable jointly to pay such expense, and that each county shall be liable to pay not less than one-sixth part of such expense. Here again the language of the statute is so plain that there can be no doubt of its meaning. *People* v. *Warren County*, 170 App. Div. 144, [155 N. Y. Supp. 642].

"In the Illinois cases cited the statute [Starr & C. Ann. Stats. 1885, c. 121, par. 19] provided: 'When it is necessary to construct or repair any bridge over a stream, or any approaches thereto, . . . and the cost of which shall be more than twenty cents on the one hundred dollars on the last assessment roll, and the levy of the road and bridge tax for that year, was for the full amount of sixty cents on each hundred dollars allowed by law for the commissioners to raise, the major part of which is needed for the ordinary repair of roads and bridges, the commissioners may petition the county board for aid; and, if the foregoing facts shall appear, the

county board shall appropriate from the county treasury a sum sufficient to meet one-half of the expenses of said bridge or other work, . . .'

"The plain provisions of the statute requiring the appropriation were held to be mandatory. *Stark County* v. *People*, 118 Ill. 459, [9 N. E. 192]; *Macon County* v. *People*, 121 Ill. 616, [13 N. E. 220].

"The Wisconsin statute [Laws 1899, c. 284] provided that 'bridges across navigable streams . . . shall be built, maintained and repaired by the town and village jointly, the expenses to be borne by each in proportion to their equalized valuation as fixed by the county board.' It was held that the town was liable for its proportion of the necessary expense incurred by the village of building a new bridge to replace an old one. *Village of Bloomer* v. *Town of Bloomer*, 128 Wis. 297, [107 N. W. 974].

"In the Kentucky cases cited, with one exception, the questions under consideration had relation to the repair of bridges or the rebuilding of bridges which had been destroyed.

"In the one exception, *City of Clinton* v. *Hickman County*, 160 Ky. 687, [170 S. W. 11], it appears from the decision that the bridges in controversy were original constructions, but it does not clearly appear what the terms of the statute were under which contribution by the county was enforced. An examination of the Kentucky decisions leads to the inference that the conclusion reached in the Clinton case was the result of judicial legislation. This view is strengthened by the closing sentence of the dissenting opinion of three out of the seven justices in the case of *Flemingsburg* v. *Fleming County*, 127 Ky. 120, [105 S. W. 133], where it is said, referring to the confusion which the courts had arrived at upon the question of constructing and maintaining joint bridges: 'This confusion, which is further extended by the opinion in this case, is the result, in my judgment, of an attempt on the part of the court to relieve a situation which calls for some remedy, but which has not been provided for by the legislature.'

"Whatever may be said as to the correctness of the Kentucky decisions, they are out of harmony with the decisions of this State respecting the finality of the determination by governing boards of questions committed to their discretion.

"It appears very clearly that whatever natural right to

contribution of the City of Redding may have against the County of Shasta, the legislature has not attempted to impose any legal liability upon the county in a case of the character involved.''

It is said that the conclusion of the judge was based principally upon the statement that the board of supervisors had, in their legislative capacity, determined that the bridge was not a public necessity, whereas what occurred was not such a determination but was merely a refusal to participate in the erection of the bridge or to contribute or agree to contribute any part of its cost. This action by the board of supervisors was taken in its official capacity at its place of conducting business and was in response to plaintiff's request then and there made. The board was not required to declare by formal ordinance or resolution that in its opinion there was no necessity for the bridge. It is a fair inference from their refusal to participate in or pay any part of its construction, that they determined this question in the negative. In any view taken of this action it was a very plain notice to plaintiff that it must not look to defendant for contribution.

In the discussion of the questions involved, the briefs take a wide range and are very elaborate. But, after all is said, the liability of defendant, if it be liable at all, depends upon the construction to be given section 2714 of the Political Code, and it is upon that section plaintiff relies.

Turning to the section, it seems to us that its true interpretation or meaning is not far to seek. It first provides for ''the repair of a bridge.'' The overseer of one district may give five days' notice to an overseer of an adjoining district to aid in the repair of a bridge in which each is interested, and the one giving the notice may make the necessary repairs, ''and must be allowed a *pro rata* compensation therefor by the board of supervisors out of the road fund of the defaulting district.'' Plainly, this provision refers only to the repair of existing bridges. We do not think plaintiff's contention, made at the argument, can be maintained, that the bridge in its original construction can be treated as a repair within the meaning of the statute. The provision as to repairs stands out apart from the provisions relating to the construction of new bridges.

The section then provides that bridges crossing the boundary line between cities or towns and road districts, or between

cities or towns, may be constructed and maintained by the cities or towns and the road district, or by the cities and towns into which such bridges extend. We can discover no mandate here that compels such construction of bridges. The statute is permissive and authorizes the construction of bridges across lines between cities and towns and road districts. The section next provides that such bridge may be constructed by contract let as provided by law by either the town, city, or county into which such bridges extend, and any such town, city, or county may contribute toward the cost of maintenance of such bridge by appropriating for such purpose any funds in the treasury of such town, city, or county, not otherwise appropriated, *"upon such terms and conditions as may be prescribed by ordinance or resolution of the governing body of such city, town or county aiding in the construction or maintenance of such bridge."* Clearly, it seems to us, no liability attaches to an interested city, town, or county, until the governing body of such city, town, or county has by ordinance or resolution prescribed the terms and conditions upon which such contribution shall be made. Just what is meant by "terms and conditions" which must first be prescribed by ordinance or resolution is not explained. It is not unreasonable to assume that this would require the governing body to determine whether or not there was a necessity for a bridge as well as the kind and character of bridge required and its cost. But whatever may have been the intention of the legislature in thus expressing its meaning, by no course of reasoning can it be said that a town, city, or road district may, independently of the wish of the adjoining town, city, or district, and particularly in the face of a refusal to participate or pay any part of the cost of the proposed bridge, proceed to erect the bridge and hold the nonconsenting town, city, or county liable for one-half the cost. This section of the code provides for compulsory contribution for the repair of existing bridges by the interested adjoining districts, but it makes no similar provision as to the original construction of bridges. To illustrate our meaning: The boundary line between the city of Sacramento and the county of Yolo is the Sacramento River. There are now two free bridges connecting said city with said county erected by the joint action and at the joint cost, in an agreed proportion, by the city and county, one at the foot of M

Street and one at the foot of H. Street. We do not think that the governing authorities of the city of Sacramento could erect another bridge across the river—we may say at the foot of K Street—however much it may be desired by or of benefit to the city, and hold the county of Yolo liable for a part of its cost unless the governing authorities of Yolo County had in some manner duly and legally authorized the erection of the bridge. For still greater reasons would this be true had Yolo County, in the supposed case, not only failed to take favorable action, but had given notice that it would not participate in the erection of such bridge or contribute to its cost. The building of public roads and bridges is made the subject of statutory regulation, and for the authority to build roads and bridges we must look alone to the statute. By what we regard as a strained and unwarranted construction, appellant would read into section 2714 substantially the same authority to build bridges and enforce compulsory contribution as is provided by the section for repairs or bridges. "In the absence of statute or agreement one territorial subdivision of the state cannot compel another to assist it in erecting bridges over their common boundaries. It is therefore a just and equitable exercise of legislative discretion to provide that when the necessity or convenience of travel renders advisable the erection of bridges over the boundaries between counties or townships, that each must contribute to the expense thereof. Such statutes must be clear and explicit, and must be strictly complied with to enable one county or town to build a bridge at its own expense and recover a *pro rata* from the other." (5 Cyc., p. 1062.)

The courts have held in numerous cases that counties, towns, and cities in the matter of building bridges over a stream dividing one county or town from another, have only such powers as are conferred upon them by statute, and, that where one county has determined that such a bridge is necessary and has so notified an adjoining county and requested the co-operation of the latter, no liability is cast upon the latter through its neglect or refusal to join with the former. In dealing with this question it was said, among other things, in *Commissioners of Highways of Dimmick v. Commissioners of Highways of the Town of Waltham*, 100 Ill. 636: "If the commissioners of one town have the power to compel the commissioners of another town to contribute one-half of the cost

of erecting a bridge over a stream on the line of two towns, without a prior contract or agreement, by merely serving notice, there are many cases where a densely populated township might bankrupt and bring ruin upon an adjoining township containing but few inhabitants and a small amount of taxable property. . . . We cannot believe such a result was ever within the contemplation of the legislature, and yet should the construction of the statute contended for by appellant prevail, such results would necessarily follow.''

That there must be concert of action and agreement between the parties concerned seems to be the principle running through the cases generally. (*Harlow* v. *Board of Commissioners,* 33 Okl. 353, [125 Pac. 449]; *Washer* v. *Bullitt County,* 110 U. S. 558, [28 L. Ed. 249, 4 Sup. Ct. Rep. 249]; *Brown* v. *Merrick County,* 18 Neb. 355, [25 N. W. 356]; *Jefferson County* v. *St. Louis County,* 113 Mo. 619, [21 S. W. 217]; *Pickens County* v. *Greene County,* 171 Ala. 377, [54 South. 998]; *McPeeters* v. *Blankenship,* 123 N. C. 651, [31 S. E. 876]; *Board of Commissioners of Fountain County* v. *Board of Commissioners of Warren County,* 128 Ind. 295, [27 N. E. 133].) In *Pickens County* v. *Greene County, supra,* dealing with the contention that the commissioners of one county may impose their will upon the commissioners of another county, under the statute in question, the court said: ''But that construction of the statute would lead to some surprising results—results so at variance with the spirit of our institutions that it may well be doubted that the legislature had the power, if it had the purpose, to bring them about. Certainly nothing short of an unequivocal legislative declaration could induce us to believe that the legislature intended to permit the commissioners of one county to control the revenue of another on the judgment of one that the interests of both will be subserved.''

In *Fountain County* v. *Warren County, supra,* the court said: ''If the construction of the statute contended for by the appellant is to be adopted, we have the anomalous case of a tribunal in one county serving summons in another county, beyond its ordinary jurisdiction, upon another tribunal of equal dignity and jurisdiction, and entering judgment and making orders against the tribunal so served, as upon a default. Certainly, a construction so much at variance with our general system of laws, and followed by such unusual

consequences, should not be adopted unless the language used is such as is not susceptible of any other reasonable construction.''

The concluding paragraphs of section 2714 confer no authority but merely provide that when the matter of building the bridge is determined by the towns, cities, and counties interested, as the statute requires, the expense shall be borne equally if they do not agree as to the proportion each is to pay. The provision as to the proceeds of bonds authorized to meet the bridge-building expense presupposes that the erection of the bridge has been authorized under the provisions of the statute. Section 2713 of the Political Code, which immediately precedes section 2714, is not without significance. Among other things is the following provision: ''Bridges crossing the line between counties must be constructed by the counties into which such bridges reach, and each of the counties into which any such bridge reaches shall any such portion of the cost of such bridge as shall have been previously agreed upon by the boards of supervisors of said counties.'' Here the necessity for joint action is clearly manifested. And we think the same principle of joint and concurrent action pervades section 2714.

The judgment is affirmed.

Hart, J., and Burnett, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on March 25, 1918.